STROUD, Judge.
 

 *177
 
 Respondent-Mother appeals from disposition orders for her minor children, B.C.T. ("Benjamin") and J.B.B. ("Jeffrey")
 
 [1]
 
 and a related civil custody order for Jeffrey. Because there is no competent evidence to support many of the trial court's findings, and the conclusions of law are not supported by the findings, we reverse and remand.
 

 I. Background
 

 Sampson County Department of Social Services ("DSS") became involved with Mother in March of 2017 after receiving a report of physical injury and injurious environment in Mother's home.
 
 [2]
 
 DSS had received
 
 *53
 
 a report that Mother's boyfriend, Travis Matthis, who lived with Mother, had punched Benjamin, age seven in the stomach. Mother had
 
 *178
 
 previously allowed her other son, Jeffrey, age twelve, to live with a family friend, Kristen Mitchell, because Jeffrey did not like Mr. Matthis.
 
 [3]
 
 After the report to DSS regarding Benjamin, Mother voluntarily agreed to place Benjamin with Ms. Mitchell as well. After an assessment, DSS determined that Mother and Mr. Matthis needed to address emotional and mental health issues, family relationships, and parenting skills. In May 2017, DSS developed a home services agreement with Mother and in June 2017 did the same for Mr. Matthis. Neither agreement is in our record on appeal. According to the reports and testimony in the record, Mother's family services agreement required her to attend individual therapy, take all medications as prescribed, attend couple's counseling with Mr. Matthis and follow any recommendations, and participate in a parenting education curriculum. There is no indication in our record that DSS ever requested that Mr. Matthis move out of Mother's home. Throughout the investigation and until entry of the order on appeal, Mother had unsupervised and unlimited visitation with both children, but Mr. Matthis saw Benjamin only during therapy sessions.
 

 DSS filed a separate petition for each child on 6 November 2017 alleging that they were abused and neglected juveniles; the allegations of the two petitions are substantially identical. The petitions note they were filed only because Mr. Matthis had not completed his family services agreement, although Mother had. Several court dates were set for a pre-adjudication hearing but were continued for various reasons. On 20 February 2018, the trial court entered pre-adjudication orders for Jeffrey and Benjamin.
 

 On 15 March 2018, Mother entered into a "consent to findings of fact" related to an adjudication of neglect only. These stipulations were:
 

 1. That on or about March 14, 2017, the Sampson County Department of Social Services received a report of Injurious Environment.
 

 2. That the Juveniles resided in the home of his mother and his mother's boyfriend Travis Matthis.
 

 3. That the Juvenile [Jeffrey] the older sibling made allegations of physical abuse against Mr. Matthis. Later, the Juvenile [Benjamin] made similar allegations.
 

 4. That those allegations were denied by Respondent Mother and Mr. Matthis.
 

 *179
 
 5. That neither Juvenile required medical treatment for any such physical abuse and that there were no marks on the juveniles to substantiate said claims.
 

 6. That Respondent Mother voluntarily placed the Juvenile [Jeffrey] with a family friend Hope Mitchell as [Jeffrey] did not want to be in the home with Mr. Matthis.
 

 7. That the Respondent Mother admitted to domestic violence in the home which included Mr. Matthis holding a gun to her head when she was previously pregnant.
 

 8. That Mr. Matthis was previously diagnosed with bipolar disorder and admitted to not taking his medication.
 

 9. That Respondent Mother admitted to leaving the child with Mr. Matthis even though she admitted she had concerns of her own personal safety with Mr. Matthis.
 

 10. On April 19, 2017, DSS substantiated injurious environment.
 

 11. On or about May 29, 2017, In Home Services were put into place for Respondent Mother to include individual therapy, medication compliance, couple's counseling with Mr. Matthis and parenting education.
 

 12. On June 9, 2017 DSS developed In Home Services plan with Mr. Matthis was developed whereby Mr. Matthis agreed to complete a mental health evaluation and follow and [sic] recommendations as well as attend individual therapy to include domestic violence counseling.
 

 13. That prior to the filing of the petition, Respondent Mother had completed most of Service Agreement but Mr. Matthis had
 
 *54
 
 not made substantial progress with his Service Agreement.
 

 On 23 April 2018, the trial court entered an order apparently based entirely upon the stipulated facts adjudicating Benjamin and Jeffrey as neglected within the meaning of N.C. Gen. Stat. § 7B-101(15) ; there was no adjudication of abuse or dependency.
 
 [4]
 
 Neither the trial court's order nor Mother's stipulations addressed the fitness of Ms. Mitchell as a caregiver or the appropriateness of placement in her home.
 

 *180
 
 Mother complied with all of the requirements of the family services agreement, and DSS noted that "[t]hroughout the CPS Investigation and In-Home Services cases, Respondent Mother has exceeded the department's recommendations and has been cooperative."
 

 Mr. Matthis also agreed to a family services agreement which included completing a mental health evaluation and following any recommendations. The mental health evaluation recommended that Mr. Matthis attend outpatient therapy and complete a psychological evaluation. Mr. Matthis completed the psychological evaluation, but that evaluation recommended no further treatment or therapy.
 
 [5]
 
 DSS noted that Mr. Matthis' attendance to couples therapy was inconsistent, but that he "began cooperating once petitions were filed in the case."
 

 The disposition hearings for each child were held simultaneously on 10 May 2018. DSS's report recommended that Benjamin-the child Mr. Matthis had allegedly punched-be returned to Mother, but that legal and physical custody of Jeffrey be granted to Ms. Mitchell. At the disposition hearing, a social worker testified that Mother had complied with her family services agreement and she was satisfied with Mother's efforts, but that she remained in a relationship with Mr. Matthis. She recommended that custody of Benjamin be granted to Mother and that DSS be released from his case. She recommended that custody of Jeffrey be granted to Ms. Mitchell due to the length of time he had already been with her and his stated desire to stay with her, and that DSS be released from his case and a Chapter 50 custody order be entered. Although Mother had previously had unlimited visitation, DSS recommended unsupervised visitation of at least one hour every other week.
 

 The only other witness who testified was a therapist who had provided individual therapy to the children and family counseling to Mother and Mr. Matthis. One issue raised at the hearing was whether Mother or Ms. Mitchell had been coaching the children; the therapist testified that the children had reported that Ms. Mitchell said things such as, "Travis [Matthis] is never going to change, he's never going to be nice to you." The only evidence in the record regarding Ms. Mitchell's home was from the DSS court report that her home was in the same school district as Mother's home and all of Benjamin's needs were met. The only testimony regarding Ms. Mitchell's home at the disposition hearing was:
 

 *181
 
 Q. Now, the home that [Jeffrey's] staying in, you've had an opportunity to see that home. Is that correct?
 

 A. Yes ma'am.
 

 Q. And, the home he has there, I believe he has a four wheeler or an ATV, is that correct?
 

 A. Correct.
 

 Q. He has video games. Is that right?
 

 A. As far as I know. I've been told of that.
 

 Q So, he has pretty much whatever a child desires as it relates to toys and those kind of things. Is that right?
 

 A. Yes ma'am.
 

 On 27 June 2018, the trial court entered a disposition order for each child. As to Benjamin, age seven, the trial court did not adopt DSS's recommendation that he be returned to Mother's custody since Mr. Matthis was still in the home, and entered a disposition order providing that: (1) legal custody remain
 
 *55
 
 with DSS and that he continue placement with Ms. Mitchell; (2) the permanent plan shall be reunification with Mother and a concurrent secondary plan of custody to a "relative or other suitable person"; (3) DSS make reasonable effort to "effectuate the current plan" for Benjamin; (4) Benjamin have no contact with Mr. Matthis; and (5) Mother have supervised visitation of at least one hour every other week.
 

 The trial court followed DSS's recommendations as to Jeffrey, and the disposition order for Jeffrey included findings of fact regarding Mother's compliance with the family services agreement and the following:
 

 14. That the Juvenile has been adamant that he does not desire to be returned to his mother's home and expressly desires to remain in his current placement.
 

 15. That it is not likely that the Juvenile will be returned home within the next six (6) months and placement with a parent is not in the Juvenile's best interests.
 

 16. That the Respondent Mother is not making adequate progress within a reasonable period of time under the current permanent plan.
 

 17. That the Respondent Mother is not actively participating in or cooperating with the plan, the Department
 
 *182
 
 of Social Services, and the Guardian ad Litem for the Juvenile.
 

 ....
 

 19. That the Respondent Mother is not acting in a manner consistent with the health or safety of the Juvenile.
 

 ....
 

 24. That the best plan of care to achieve a safe, permanent home for the Juvenile within a reasonable period of time is custody to a relative or other suitable person.
 

 25. That the Department has made reasonable efforts in this matter to develop and implement a permanent plan for the Juvenile.
 

 26. That the Court finds that the conditions which led to the removal of the Juvenile from the Juvenile's home still exists and that a return of the Juvenile to said home would be contrary to the welfare of the Juvenile.
 

 27. That there is no longer a need for continued State intervention on behalf of the Juvenile through a juvenile court proceeding.
 

 28. That the Juvenile was residing with Kristen "Hope" Mitchell at the time of the filing of the Petition.
 

 ....
 

 30. That, by clear and convincing evidence, the Respondent Mother is not a fit and proper person to have the care, custody, and control of the Juvenile and has acted inconsistently with her constitutionally protected status as a parent to the Juvenile.
 

 The disposition orders provided for Mother to have one hour of supervised visitation a week. A related civil custody order was also entered on the same day granting physical and legal custody of Jeffrey to Ms. Mitchell, with Mother to have one hour of supervised visitation every other week. Mother timely appealed the disposition orders for Benjamin and Jeffrey, but her notice of appeal failed to include the related civil custody order.
 

 *183
 
 II. Petition for Writ of Certiorari
 

 Mother asks this Court to issue a writ of certiorari to address the civil custody order which was not included in her notice of appeal for Jeffrey.
 

 Pursuant to N.C. Gen. Stat. § 7B 1001 (2013), notice of appeal and notice to preserve the right to appeal shall be given in writing within 30 days after entry and service of the order. An appellant's failure to give timely notice of appeal is jurisdictional, and an untimely attempt to appeal must be dismissed. However, writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals. This Court has held that an appropriate circumstance to issue writ of certiorari occurs when an appeal has been lost because of a failure of his or her trial counsel to give proper notice of appeal.
 

 In re J.C.B.
 
 ,
 
 233 N.C. App. 641
 
 , 645,
 
 757 S.E.2d 487
 
 , 490 (2014) (citations, brackets, ellipsis, and quotation marks omitted).
 

 *56
 
 Mother's notice of appeal for each case refers to the "Order of Adjudication signed by the Honorable William Sutton, Jr. on March 15, 2018 and Order of Disposition signed by the Honorable Carol Jones on May 10, 2018."
 
 [6]
 
 Mother acknowledges that her "notice of appeal, however, did not reference the civil custody order entered pursuant to N.C. Gen. Stat. § 7B-911." In our discretion, we grant Mother's petition for writ of certiorari and review the civil custody order along with the disposition orders.
 

 III. N.C. Gen. Stat. § 7B-910 Hearing
 

 The trial court entered a disposition order as to each child, and portions of the two orders are identical and Mother raises the same legal issues for those portions. We will address the portions of the two orders which are the same together. But the two orders decree a different disposition for each child and include some different conclusions of law, so we will address the portions of the order which differ separately for each child. The first issue, which applies to both children, is whether the trial court erred by failing to hold a hearing as required by N.C. Gen. Stat. § 7B-910 to review the voluntary placements of the children within
 
 *184
 
 90 days of the placement under her agreement with DSS.
 
 See
 
 N.C. Gen. Stat. § 7B-910 (2017).
 

 Mother argues that the trial court violated the review requirements of N.C. Gen. Stat. § 7B-910, and since no hearing occurred, both children should have been returned to her since an "adjudication petition was not filed after [they were] in Ms. Mitchell's custody for six months." We review statutory errors
 
 de novo
 
 .
 
 In re K.M.M.
 
 ,
 
 242 N.C. App. 25
 
 , 28,
 
 774 S.E.2d 430
 
 , 432 (2015).
 

 N.C. Gen. Stat. § 7B-910 states:
 

 (a) The court
 
 shall
 
 review the placement of any juvenile in foster care made pursuant to a voluntary agreement between the juvenile's parents or guardian and a county department of social services and shall make findings from evidence presented at a review hearing with regard to:
 

 (1) The voluntariness of the placement;
 

 (2) The appropriateness of the placement;
 

 (3) Whether the placement is in the best interests of the juvenile; and
 

 (4) The services that have been or should be provided to the parents, guardian, foster parents, and juvenile, as the case may be, either (i) to improve the placement or (ii) to eliminate the need for the placement.
 

 (b) The court may approve the continued placement of the juvenile in foster care on a voluntary agreement basis, disapprove the continuation of the voluntary placement, or direct the department of social services to petition the court for legal custody if the placement is to continue.
 

 (c) An initial review hearing shall be held not more than 90 days after the juvenile's placement and shall be calendared by the clerk for hearing within such period upon timely request by the director of social services.
 

 N.C. Gen. Stat. § 7B-910 (emphasis added).
 

 In response to Mother's argument that a hearing within 90 days of the voluntary placement was required, DSS contends that "[i]t is not apparent that N.C.G.S. § 7B-910, titled 'Review of voluntary foster care placements,' is applicable to the present case; placement of Benjamin with Ms. Mitchell in March 2017 did not involve DSS placement or the
 
 *185
 
 foster care system." The guardian
 
 ad litem
 
 similarly argues, "since the Mother placed Benjamin with Ms. Mitchell without any agreement involving or with DSS, the requirement of a review hearing was not triggered." But although Mother placed Benjamin with Ms. Mitchell prior to DSS's involvement, she placed Jeffrey with Ms. Mitchell based upon some sort of agreement with DSS due to the investigation.
 

 Our record is not sufficient to consider Mother's argument on N.C. Gen. Stat. § 7B-910 because her agreement with DSS, if any, is not in our record. The requirements of N.C. Gen. Stat. § 7B-910 apply to a "voluntary placement agreement," but not a "temporary
 
 *57
 
 parental safety agreement."
 
 See
 
 N.C. Gen. Stat. § 7B-910.
 
 [7]
 

 It is the appellant's duty to include any information necessary for review of the issues raised on appeal.
 
 See
 
 N.C. R. App. P. 9(a). Since our record does not include documentation of the terms of the agreement with DSS, we cannot review Mother's argument regarding applicability of N.C. Gen. Stat. § 7B-910. But, as discussed below, we must reverse the orders on appeal based upon other issues with the trial court's actions.
 

 IV. Findings of Fact
 

 "The standard of review that applies to an assignment of error challenging a dispositional finding is whether the finding is supported by competent evidence. A finding based upon competent evidence is binding on appeal, even if there is evidence which would support a finding to the contrary."
 
 In re B.W.
 
 ,
 
 190 N.C. App. 328
 
 , 332,
 
 665 S.E.2d 462
 
 , 465 (2008) (citation, quotation marks, and brackets omitted). For challenged conclusions of law, we determine whether the trial court's facts support the challenged conclusion.
 
 Id.
 
 at 335,
 
 665 S.E.2d at 467
 
 . "We review a trial court's determination as to the best interest of the child for an abuse of discretion."
 
 In re D.S.A.,
 

 181 N.C. App. 715
 
 , 720,
 
 641 S.E.2d 18
 
 , 22 (2007).
 

 A. Finding of Dependency
 

 Mother challenges finding of fact 1 from both orders which are identical in substance:
 

 *186
 
 1. That pursuant to a N.C. Gen. Stat. § 7B-901, this matter comes on for a Dispositional Hearing following an adjudication of neglect and dependency which was made on March 15, 2018.
 

 Mother argues that the children were never adjudicated dependent. In the trial court's orders on adjudication, Mother stipulated to certain facts and to an adjudication of neglect, but the trial court did not adjudicate Jeffrey or Benjamin as dependent. Therefore, the finding by the trial court that Jeffrey and Benjamin were adjudicated as dependent is not supported by competent evidence or by the adjudication orders.
 

 B. Finding of Fact 4
 

 Mother next challenges findings related to Ms. Mitchell. These findings are in both orders.
 
 [8]
 
 The first finding is:
 

 4. That the home of Kristen "Hope" Mitchell is safe, suitable, and appropriate for the Juvenile.
 

 Mother argues that there was no evidence regarding Ms. Mitchell's home and no findings of fact to demonstrate why her home is "safe, suitable, and appropriate." She contends that "[t]he trial court should have considered the availability of relative placements and should have verified whether Ms. Mitchell was an appropriate placement[,]" and "[t]he trial court's order should have contained more than conclusory determinations regarding Ms. Mitchell." Although a trial court need not include detailed findings as to all of the evidence presented, we agree this conclusory finding is not supported by the evidence or any other findings of fact. At the hearing, the only specific evidence regarding Ms. Mitchell or her home was that she had provided "pretty much whatever a child desires as it relates to toys and those kind of things," including a "four-wheeler or ATV" and video games. The only other evidence about Ms. Mitchell was from the children's therapist:
 

 Q. Okay. Now, if you could, if you know the relationship between Ms. Mitchell and the boys or how that - what that relationship is can you explain that? Is she just a family
 
 *58
 
 friend? Is she a distant cousin? Do you know?
 

 A. My understanding is that she is a family friend and that she has been a part of their lives for at least the majority of [Jeffrey's] life.
 

 *187
 
 Neither DSS's reports nor the evidence and testimony at trial provided any substantive information about Ms. Mitchell, her home or her care of the children. Having "pretty much whatever a child desires as it relates to toys and those kinds of things" is not necessarily in a child's best interest. This testimony could also tend to support Mother's argument that Ms. Mitchell was seeking to alienate the children from her - many children would prefer to stay where they have "whatever a child desires as it relates to toys and those kinds of things." In any event, this evidence provides no basis for findings of fact regarding Ms. Mitchell's suitability as a custodian for the children. There is no competent evidence to support any of the trial court's findings regarding Ms. Mitchell, and the trial court's findings cannot support the related conclusions of law.
 

 C. Findings of fact 29 and 32
 

 Mother challenges findings of fact 29 and 32 in Jeffrey's order:
 

 29. That Kristen "Hope" Mitchell is a fit and proper person to have the care, custody, and control of the Juvenile.
 

 ....
 

 32. That it is in the best interests of the Juvenile for Kristen Hope Mitchell to be granted the care, custody, and control of the Juvenile.
 

 Mother also challenges conclusion of law 5, which is identical to finding of fact 29:
 

 5. That Kristen Hope Mitchell is a fit and proper person to have the care, custody, and control of the Juvenile.
 

 We first note that finding 32 is actually a conclusion of law, which we review
 
 de novo
 
 :
 

 The determination of what will best promote the interest and welfare of the child, that is, what is in the best interest of the child, is a conclusion of law, and this conclusion must be supported by findings of fact as to the characteristics of the parties competing for custody. These findings may concern the physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child. These findings cannot, however, be mere conclusions.
 

 Hunt v. Hunt
 
 ,
 
 112 N.C. App. 722
 
 , 728,
 
 436 S.E.2d 856
 
 , 860 (1993) (citations and quotation marks omitted).
 

 *188
 
 A "conclusory recitation" of the best interests standard, without supporting findings of fact, is not sufficient.
 
 See
 

 Lamond v. Mahoney
 
 ,
 
 159 N.C. App. 400
 
 , 406,
 
 583 S.E.2d 656
 
 , 660 (2003) ("Finding of fact 11, as a mere conclusory recitation of the standard, cannot support the order."). As discussed above, there was almost no evidence regarding Ms. Mitchell, her home, or her care of the children, so finding of fact 29 that she was a fit and proper person to have custody of the children is not supported by the evidence.
 

 We have previously noted that the trial court need not use "magic words" in its findings of fact or conclusions of law, if the evidence and findings overall make the trial court's basis for its order clear.
 
 See
 

 Davis v. Davis,
 

 229 N.C. App. 494
 
 , 503,
 
 748 S.E.2d 594
 
 , 601 (2013). Here, we have disposition orders with "magic words" but no evidence to support some of the crucial findings of fact and thus no support for the related conclusions of law.
 

 D. Finding of Fact 15
 

 Mother next challenges finding of fact 15 in Jeffrey's order:
 

 15. That it is not likely that the Juvenile will be returned home within the next six (6) months and placement with a parent is not in the Juvenile's best interests.
 

 The basis for this finding is entirely unclear, since DSS reported, and the trial court found, that Mother had complied with everything required of her by the family services agreement. It is true that
 
 Jeffrey-
 
 age 12-had refused to participate in person with family therapy, but Mother did everything required of her by the family services agreement. It is noteworthy there was no prior court order requiring either her or Mr.
 
 *59
 
 Matthis to do anything, and no prior order that Mr. Matthis not be in the presence of the children. Mr. Matthis also complied with his family services agreement. The first and only substantive hearing in this case was the disposition hearing, where the trial court removed both children from Mother even though there had never been even an allegation she was unfit to care for the children, nor had the trial court entered any orders directing Mother, or Mr. Matthis to take any specific actions for the children to be returned to Mother. The only requirements placed upon Mother were those under the family services agreement. The social worker's recommendation that Jeffrey remain with Ms. Mitchell was based
 
 only
 
 on the length of time Jeffrey had lived with Ms. Mitchell and his desire to stay with her, not any concern about his safety with Mother or Mr. Matthis. This finding is not supported by the evidence.
 
 *189
 
 E. Finding of Fact 26
 

 Mother next challenges finding of fact 26
 
 [9]
 
 from both orders:
 

 26. That the Court finds that the conditions which led to the removal of the Juvenile from the Juvenile's home still exists and that a return of the Juvenile to said home would be contrary to the welfare of the Juvenile.
 

 According to the stipulations in the adjudication order, the "conditions which led to the removal" were allegations of one incident of Mr. Matthis punching Benjamin (which Mother and Mr. Matthis denied and was never established as fact by any order), reports of domestic violence between Mother and Mr. Matthis "when she was previously pregnant," and a report that in the past Mr. Matthis had been diagnosed with and needed treatment for bipolar disorder.
 
 [10]
 
 Based upon these concerns, DSS entered into family services agreements with both Mother and Mr. Matthis, and by the time of the disposition hearing, both had fully complied with DSS's recommendations to remedy the concerns regarding domestic violence, parenting skills, and mental health. There was no evidence that the conditions which led to removal still existed. The only condition which still existed was Jeffrey's desire to live with Ms. Mitchell. While Jeffrey had stated that his preference was to remain with Ms. Mitchell-perhaps because of the toys at her home or because he dislikes Mr. Matthis-custody cannot be granted to a third party unless the parent is unfit or has acted inconsistently with her constitutionally protected rights as a parent.
 
 See
 

 Price v. Howard
 
 ,
 
 346 N.C. 68
 
 , 79,
 
 484 S.E.2d 528
 
 , 534 (1997). As long as the parent is fit to care for her child, the court cannot award custody of a child to a third party based only upon the child's preference or the fact that the third party "may offer more material advantages in life for the child."
 
 Petersen v. Rogers
 
 ,
 
 337 N.C. 397
 
 , 402,
 
 445 S.E.2d 901
 
 , 904 (1994) ;
 
 see also
 

 Clark v. Clark
 
 ,
 
 294 N.C. 554
 
 , 576-77,
 
 243 S.E.2d 129
 
 , 142 (1978) ("When the child has reached the age of discretion, the court may consider the preference or wishes of the child to live with a particular person. A child has attained an age of discretion when it is of an age and capacity to form an intelligent or rational view on the matter. The expressed wish of a child of
 
 *190
 
 discretion is, however, never controlling upon the court, since the court must yield in all cases to what it considers to be for the child's best interests, regardless of the child's personal preference. ... The preference of the child should be based upon a considered and rational judgment, and not made because of some temporary dissatisfaction or passing whim or some present lure." (alteration in original) ).
 

 At trial, the social worker testified about the reasons DSS recommended custody be granted to Ms. Mitchell:
 

 We are recommending that the temporary safety provider receive full custody of [Jeffrey].
 
 That is mainly due to the fact that he does not want to return to respondent mother's home at this time. And, he has
 

 *60
 

 been living with Ms. Mitchell for quite some time before DSS involvement.
 

 (Emphasis added.) All of DSS's evidence showed that Mother and Mr. Matthis had followed their family service agreements. DSS had recommended that Benjamin return to the home and would not have made this recommendation if concerns regarding his safety still existed. There is no evidence in the record that DSS or the trial court ever recommended or requested that Mr. Matthis be required to leave Mother's home. Finding of fact 26 is not supported by competent evidence.
 

 F. Findings of Fact 16, 17, and 19
 

 Mother challenges findings related to her progress with her "permanent plan":
 

 16. That the Respondent mother is not making adequate progress within a reasonable period of time under the current permanent plan.
 

 17. That the Respondent Mother is not actively participating in or cooperating with the plan, the Department of Social Services, and the Guardian ad Litem for the Juvenile.
 

 ....
 

 19. That the Respondent Mother is not acting in a manner consistent with the health or safety of the Juvenile.
 

 We first note that the trial court had adopted no "permanent plan" for either child, since no permanency planning hearing or review hearings of any sort were held. The only prior order was the adjudication of neglect based upon the stipulated facts. As has been noted, the social
 
 *191
 
 worker's report and testimony show that DSS was fully satisfied with Mother's efforts. Indeed, it is not clear how Mother could have done anything else to participate in or cooperate with a plan, since DSS had no other recommendations or requirements for her. These findings are not supported by competent evidence.
 

 G. Findings of Fact 24, 25, 27 and 30
 

 Mother next challenges findings 24 through 27 and finding 30:
 

 24. That the best plan of care to achieve a safe, permanent home for the Juvenile within a reasonable period of time is custody to a relative or other suitable person.
 

 25. That the Department has made reasonable efforts in this matter to develop and implement a permanent plan for the Juvenile.
 

 ....
 

 27. That there is no longer a need for continued State intervention on behalf of the Juvenile through a juvenile court proceeding.
 

 ....
 

 30. That, by clear and convincing evidence, The Respondent Mother is not a fit and proper person to have the care, custody, and control of the Juvenile and has acted inconsistently with her constitutionally protected status as a parent to the Juvenile.
 

 Once again, these findings are in part conclusions of law and are conclusory recitations of standards with no findings to support them. For all the reasons noted above regarding the other findings, these findings are also not supported by competent evidence. DSS's 10 May 2018 reports noted that [t]hroughout the CPS Investigation and In-Home Services cases, Respondent Mother has exceeded the department's recommendations and has been cooperative." The evidence presented at trial only supported DSS's statement, and we find no evidence at all-much less clear, cogent and convincing evidence-that Mother "has acted inconsistently with her constitutionally protected status as a parent." There was never any allegation that Mother had done
 
 anything
 
 to harm either child, and throughout the case, until entry of the disposition orders on appeal, she had unlimited, unsupervised visitation with no problems.
 

 *192
 
 The social worker testified that she had visited Mother's home and it was sufficient to care for Jeffrey and Benjamin.
 

 H. Civil Custody Order
 

 Mother also challenges findings of fact 5, and 7 through 11 of Jeffrey's civil custody order:
 

 5. Pursuant to subsequent orders of this Court the Juvenile/Juveniles was/were placed with the Plaintiff herein.
 

 *61
 
 ....
 

 7. No further review or judicial oversight is required pursuant to North Carolina Chapter 7B regarding the minor child(ren).
 

 8. The Plaintiff is a fit and proper person to have the care, custody, and control of the minor child(ren).
 

 9. That, upon clear and convincing evidence, the Defendant(s) have acted inconsistent with their constitutionally protected status as parents to the child(ren).
 

 10. That, upon clear and convincing evidence, [Mother] is not fit and proper person to have the care, custody, and control of the minor child(ren).
 

 11. That it is in the best interests of the minor child(ren) that the Plaintiff be granted the care, custody, and control of the minor child(ren).
 

 No additional evidence was presented before the trial court for the civil custody order. As discussed above, the trial court's findings related to Ms. Mitchell are not based on competent evidence, the findings regarding Mother's failure to make progress on her plan are not supported by any evidence, and there was no evidence that Mother was unfit or had acted inconsistently with her constitutionally protected status as a parent. The trial court's conclusions of law as discussed above were not supported by the findings of fact.
 

 V. Benjamin's Disposition Order
 

 One issue unique to Benjamin's case is that DSS recommended that Benjamin be returned to Mother's custody and that DSS be released
 
 *193
 
 from the case. The trial court did not adopt this recommendation but instead placed him in the legal custody of DSS and allowed him to remain with Ms. Mitchell. Certainly the trial court does not have to follow DSS's recommendations, but it must make findings of fact based upon competent evidence to support its disposition. And this Court has previously held that parties are not allowed to make different arguments on appeal than before the trial court to "swap horses between courts in order to get a better mount."
 
 In re I.K.
 
 ,
 
 227 N.C. App. 264
 
 , 266,
 
 742 S.E.2d 588
 
 , 590 (2013). DSS is not exempt from this rule. As in
 
 In re I.K.
 
 , DSS did not acknowledge that its position at trial was that Benjamin should be returned to Mother, and instead argued on appeal that the disposition order should be affirmed. Unsurprisingly, DSS cannot direct us to any evidence to support its arguments regarding Benjamin, since it did not seek to prove that Benjamin should remain in DSS's custody and the only reason it recommended that Jeffrey stay with Ms. Mitchell was his stated preference and the length of time Jeffrey had been with Ms. Mitchell. DSS's argument has changed on appeal, although the facts have not, and "[t]his is of particular concern because the primary goal of the Juvenile Code, which includes DSS's duties, is to seek to protect the best interests of abused, neglected, or dependent children."
 
 Id.
 
 at 266,
 
 742 S.E.2d at 590-91
 
 . DSS is not obligated to adopt a different position on appeal just to oppose the appealing parent if it has previously determined that a parent has a safe and appropriate home and the child should be returned to the parent.
 

 VI. Conclusion
 

 We reverse and remand the trial court's disposition orders for Benjamin and Jeffrey and Jeffrey's civil custody order and instruct the trial court to hold a new hearing and enter orders with findings of facts supported by competent evidence that support its conclusions of law. To grant custody of a child to a third party, we note that the evidence must establish "that the legal parent acted in a manner inconsistent with his or her constitutionally-protected status as a parent."
 
 See
 

 Moriggia v. Castelo
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 378
 
 , 385 (2017). So far, no evidence has been presented which could support such a conclusion, and DSS did not take this position before the trial court. Although DSS recommended that Jeffrey remain in Ms. Mitchell's custody, this recommendation was apparently based
 
 only
 
 upon the child's wishes and the fact that he had been there "for quite some time before DSS involvement" and not upon Mother's unfitness. "Whether on remand for additional findings a trial court receives new evidence
 
 *62
 
 or relies on previous evidence submitted is a matter within the discretion of the trial court."
 
 *194
 

 In re I.K.
 
 ,
 
 227 N.C. App. at 276
 
 ,
 
 742 S.E.2d at 596
 
 . But based upon the evidence of record as of 10 May 2018, there is no factual support for a conclusion that Mother is unfit to have custody of her children, much less to limit her to an hour of supervised visitation every other week.
 

 REVERSED AND REMANDED.
 

 Judges TYSON and ARROWOOD concur.
 

 [1]
 

 Pseudonyms are used for ease of reading and to protect the juveniles' identities.
 

 [2]
 

 Benjamin and Jeffrey have different fathers. Benjamin's father did not participate in the trial, but Jeffrey's did. Neither father is a party to this appeal.
 

 [3]
 

 There is no indication in our record that DSS had any involvement in Mother's previous voluntary placement of Jeffrey with Ms. Mitchell.
 

 [4]
 

 The stipulated facts are not attached to or incorporated into the order but the order does refer to them.
 

 [5]
 

 The evaluation is not in our record, but the DSS reports and testimony show that Mr. Matthis had completed everything DSS had asked him to do.
 

 [6]
 

 We note that even though Mother's notice of appeal references the adjudication orders, she makes no argument in her brief challenging the adjudication orders.
 

 [7]
 

 In either type of agreement, both parties to the agreement have the right at any time to unilaterally revoke the agreement, and custody does not transfer with the agreement.
 
 See
 
 N.C. Dep't of Health and Human Svcs., Voluntary Placement Agreement (DSS-1789, rev 10/2010), https://www2.ncdhhs.gov/info/olm/forms/dss/dss-1789-ia.pdf; N.C. Dep't of Health and Human Svcs., Temporary Parental Safety Agreement (DSS-5231, rev. 01/2017), https://www2.ncdhhs.gov/info/olm/forms/dss/dss-5231-ia.pdf. A required component of both types of agreements is that they are voluntary in both the execution and their duration.
 

 Id.
 

 [8]
 

 The challenged finding is finding of fact number 4 in Jeffrey's order and 6 in Benjamin's order.
 

 [9]
 

 Finding of Fact 17 in Benjamin's order.
 

 [10]
 

 There is no indication of when this pregnancy occurred. Based upon our record, Mother has only these two children and there is no mention of any pregnancy since Benjamin, so her most recent pregnancy would presumably have been over seven years prior to the petition.