IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-267

Filed: 15 December 2020

Guilford County, No. 19 JA 404-06

IN THE MATTER OF: A.J.L.H., C.A.L.W., M.J.L.H.

Appeal by respondents from order entered 13 December 2019 by Judge Tonia A. Cutchin in Guilford County District Court. Heard in the Court of Appeals 17 November 2020.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Social Services.*
>
> *Benjamin J. Kull for respondent-father appellant.*
>
> *Tin, Fulton, Walker & Owen, PLLC, by Cheyenne N. Chambers, for respondent-mother appellant.*

TYSON, Judge.

Respondent-mother and Respondent-stepfather (collectively "Respondents") appeal from the trial court's adjudication and disposition order. Respondents argue the trial court erred by adjudicating their minor children, Margaret, age ten, Chris, age four, and Anna, age one, as abused and neglected, and by prohibiting visitation. *See* N.C. R. App. P. 42(b) (permitting the use of pseudonyms to protect the identity of the child throughout the opinion). Respondents are the biological parents of Anna.

Respondent-stepfather is stepfather to Respondent-mother's daughters, Margaret and Chris, born of previous relationships.

We vacate the adjudications of abuse and neglect and remand. We also vacate the disposition order regarding Chris and Anna and dismiss the petitions and remand for entry of an order to provide Respondents visitation with Margaret.

## I. Background

Guilford County Department of Health and Human Services ("GDHHS") received a report on 21 May 2019 alleging then nine-year-old Margaret had been disciplined with a belt, which had left marks on her skin. Social worker, Lisa Joyce ("Joyce") was assigned to investigate. On 22 May 2019, another report was filed of a new injury the size of a silver dollar on Margaret's upper back. Joyce testified Margaret was hiding under a desk when she arrived to interview her and asserted Margaret did not want to go home because they "were going to hurt her."

Respondent-mother acknowledged she had disciplined Margaret for lying and being untruthful about following directions, by having her *inter alia*, sleep upon the floor, allowing her eat only crunchy peanut butter sandwiches, having her stand in the corner at home for long periods, prohibiting her from watching TV or playing outside, and by having Respondent-stepfather to discipline her by using corporal punishment. Respondent-mother explained the marks were accidental, because Margaret had moved around a lot and the belt meant for her buttocks had landed on

her back. Joyce informed Respondent-mother that GDHHS felt the discipline was "a little bit extreme." Respondents immediately agreed to a safety plan. The plan placed Margaret with her maternal grandparents, but left Chris and Anna in the home in Respondents' care.

During her investigation, Joyce received two reports from Randolph County Department of Social Services ("RDSS") filed during 2015 and 2017, involving Respondent-mother. Respondent-mother had also been charged with misdemeanor child abuse and Respondent-stepfather had been charged with assault on a child under the age of twelve stemming from the actions related to the present petition. Respondents' charges were pending at the time of this order on appeal.

On 8 August 2019, GDHHS held a Child and Family Team meeting. At the meeting, GDHHS decided to petition for custody of all three children, even though GDHHS had gathered all relevant family history information in May and all home visits with the intact family from May through August had revealed no concerns. GDHHS case workers had made multiple home visits. No new or ongoing concerns were raised or noted. The safety plan was never violated.

During adjudication, Joyce testified the decision resulted from "information learned during the assessment," RDSS records received in May; and GDHHS' disagreement with Respondents "admitting that they did not feel . . . their disciplinary measures and actions were unusual or cruel."

On 9 August 2019, GDHHS filed juvenile petitions alleging Margaret was abused and neglected. Her siblings, four-year-old Chris, and one-year-old, Anna, were alleged to be neglected. The court determined a need for GDHHS to take nonsecure custody of all three children.

At the filing of the petition, Margaret remained in an out-of-home kinship placement with her maternal grandparents and Chris and Anna remained at home with Respondents. Subsequently Margaret was moved to foster care and then was moved into the home of her maternal grandmother by court order, and Chris and Anna were removed from Respondents' home and to foster care.

The adjudication and disposition hearing was held on 8 November 2019. By order entered 13 December 2019, the court concluded Margaret was an abused juvenile and all three children were neglected. The court denied Respondents any visitation with the children. Respondents timely appealed.

## II. Jurisdiction

Jurisdiction lies in this Court from an appeal of the adjudication and disposition order pursuant to N.C. Gen. Stat. § 7B-1001(a)(3) (2019).

## III. Issues

Respondents argue the trial court erred by: (1) admitting hearsay evidence, (2) adjudicating Margaret abused and neglected, and Chris and Anna neglected and (3) arbitrarily denying Respondents any visitation with all three children.

IV. Respondent-stepfather's Standing

Margaret, Chris, and Anna are children of different biological fathers. Respondent-stepfather is not the legal or putative father of Margaret or Chris. Respondent-stepfather is the biological father of Anna. Only Respondent-stepfather is a party to this appeal. This Court has made a distinction between a parent and stepparent.

> N.C. Gen. Stat. § 7B-101(8) defines caretaker as a person other than a parent, guardian, or custodian who is responsible for the health and welfare of a juvenile, and specifies that this term includes a stepparent. N.C. Gen. Stat. § 7B-1002(4) does not authorize an appeal by a stepparent in the absence of record evidence that the stepparent has become the child's parent through adoption or is otherwise qualified under the statute.

*In re M.S.*, 247 N.C. App. 89, 93-94, 785 S.E.2d 590, 593 (2016) (alternations, citations, and internal quotations omitted). Respondent-stepfather has standing to appeal only on behalf of his biological daughter, Anna. He has no standing to appeal the order regarding either Margaret or Chris.

V. Analysis

A. Parental Rights

> We have long recognized that the [Fourteenth] Amendment's Due Process Clause, like its Fifth Amendment counterpart, guarantees more than fair process. The Clause also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests. The liberty interest at issue in this case—the

> interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court.

*Troxel v. Granville*, 530 U.S. 57, 65, 147 L. Ed. 2d 49, 56 (2000) (alterations, internal citations and quotation marks omitted). The Supreme Court of the United States also held "the liberty protected by the Due Process Clause includes the right of parents to establish a home and bring up children and to control the education of their own." *Id.*

Both of the holdings in *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551 (1972) and *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599 (1982) also demonstrate that under fundamental common law and Constitutional protections, "the parents' right to retain custody of their child and to determine the care and supervision suitable for their child, is a 'fundamental liberty interest' which warrants due process protection." *In re Montgomery*, 311 NC 101, 106, 316 S.E.2d 246, 250 (1984).

> [T]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations . . . . there is a constitutional dimension to the right of parents to direct the upbringing of their children. It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the [S]tate can neither supply nor hinder.

*Troxel*, 530 U.S. at 65, 147 L. Ed. 2d at 56.

## B. Hearsay Evidence

The North Carolina Constitution and General Statutes mandate the trial court must protect the due process and parental rights of the juvenile's parent and of the juvenile throughout the adjudicatory hearing. N.C. Gen. Stat. § 7B-802 (2019). "Where the juvenile is alleged to be abused, neglected, or dependent, the rules of evidence in civil cases shall apply." N.C. Gen. Stat. § 7B-804 (2019).

Respondents assert inadmissible and prejudicial hearsay was admitted at the hearing. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2019) (internal quotation marks omitted). "Hearsay is not admissible except as provided by statute or by these rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2019).

### 1. Hearsay Exceptions

Hearsay may be admissible if the statement meets the requirement of a statutory exception. "A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is (A) his own statement, in either his individual or a representative capacity." N.C. Gen. Stat. § 8C-1, Rule 801(d) (2019).

### 2. Inadmissible Hearsay

Margaret did not appear nor testify at the hearing. Nothing in the record shows she was unavailable as a witness. Respondents assert findings of fact 12-15 of

- 7 -

the adjudication and disposition order are based on inadmissible and prejudicial hearsay and repeat parts of GDHHS' petition's allegations *verbatim*.

Findings of facts 12 and 13 relayed the reports made to Child Protective Services (CPS) asserting Margaret had bruises on 21 May 2019, and new bruises on 22 May 2019. Margaret did not want to state who had disciplined her. GDHHS points out these findings are intended as recitations of historical accounts of the background events leading up to the filing of the juvenile petition.

Respondents assert finding of fact 14 and portions of finding 15 rest upon hearsay. Respondents assert Margaret's out-of-court statements were inadmissible hearsay. The trial court found:

> 14. On May 22, 2019, [Joyce] interviewed [Margaret] . . . [Margaret] informed . . . Joyce that she got up early after Respondent-stepfather, went to work . . . She said that she did not know if she missed the bus, so she started walking to school . . . [Margaret said] the neighbor took her to school . . . [and] she was afraid to go home yesterday because she took (sic) her head wrap off because it was hurting her. Margaret stated that her mother told her if she took her head wrap off, she would get a whipping . . . She said that the marks on her back were from getting a whipping from her stepfather, who whipped her with a belt buckle . . . She said normally she gets whipped on her legs and back . . . marks are left every time. . . . [Joyce] observed the juvenile had marks on her lower back and a mark near her neck area.

> 15. . . . . She was told that [Margaret] was afraid to go home and that there were marks on her back from physical discipline. [Respondent-mother] confirmed that she did physically discipline [Margaret] by whipping her and

[Respondent-stepfather] also physically disciplined her because of her lying. [Respondent-mother] stated that the bruises were an accident (sic) because [Margaret] was moving around while [Respondent-stepfather] was trying to discipline her. She confirmed that she disciplines [Margaret] by making her eat crunchy peanut butter sandwiches as a form of punishment for lying because [Margaret] does not like crunchy peanut butter sandwiches. [Respondent-mother] further stated that she takes the juvenile's bed privileges away for lying, and she stands in the corner from 3:30pm until dinner-around 6:00pm, then after eating she makes the juvenile stand in the corner until time to go to bed at 8:00pm; the juvenile has to sleep on the floor. [Respondent-mother] indicated that these disciplinary acts are used when the juvenile lies; however, that did not normally occur every day, but had been occurring every day lately. She indicated that [Margaret] had been lying about her headwrap. [Respondent-mother] stated that [Margaret's] hair is hard to manage, and she makes her wear a headwrap to keep from pulling at her hair. She informed [Joyce] that she did not see anything wrong with her means of discipline. [Joyce] informed [Respondent-mother] that the Department could not condone her disciplinary practices[.]

At adjudication, Respondents objected to the introduction of hearsay evidence eleven times. Ten of those objections were overruled without any finding or ruling on a proper hearsay exception to allow their admission. Here, the issues are whether abuse and neglect of the minor children had occurred. Respondents assert the trial court's findings on the alleged abuse are based upon out-of-court statements offered to prove the matter asserted and these statements did not meet any exception to be admitted.

The findings of fact rely upon out-of-court statements used to prove the truth of purported abuse and neglect of Margaret and piggyback those inadmissible hearsay statements to show purported neglect of Chris and Anna. No competent evidence whatsoever was presented to support the purported finding in finding of fact that Margaret was afraid to go home or fearful of retaliation.

GDHHS argues both respondents admitted to the details Margaret shared about their discipline. As such, GDHHS asserts the Respondents' statements are permitted as admissions of a party-opponent pursuant to N.C. Gen. Stat. § 8C-1, Rule 801 (permitting hearsay if a statement is offered against a party and it is his own statement).

Respondents' statements may be admissible as a statement by a party opponent pursuant to N.C. Gen. Stat. § 8C-1, Rule 801(d). However, finding 14 is replete with the out-of-court statements purportedly made by Margaret to Joyce. Margaret was not found to be unavailable as a witness. GDHHS never argued any hearsay exception applied to prevent Margaret from appearing and testifying as a witness based upon her age, competency, or otherwise.

Finding of fact 14 and portions of finding of fact 15 are based upon inadmissible hearsay statements attributed to Margaret. These findings are erroneous and unsupported by clear and convincing evidence.

Here, the trial court's finding that GDHHS had asserted inappropriate

discipline of Margaret is arguably supported by Respondents' statements, to overcome the prejudice of incompetent evidence. *See In re McMillon,* 143 N.C. App. 402, 411, 546 S.E.2d 169, 175 (holding the admission of incompetent evidence is not prejudicial where there is other competent evidence to support the district court's findings), *disc. review denied,* 354 N.C. 218, 554 S.E.2d 341 (2001).

C. Remaining Findings of Fact

Respondents assert that two sentences of finding of fact 17 are unsupported. Respondents assert no evidence identifies the names of all attendees at the Child and Family Team meeting or that Respondents had required Margaret to do her homework on one leg. GDHHS concedes no evidence supports the challenged statements. These two statements of finding of fact are unsupported by any evidence.

Respondent-mother also challenges finding of fact 20 that she has an extensive CPS history in Randolph County and Guilford County. Finding of fact 20 lists three previous reports involving Margaret. Respondent-mother argues finding 20 details GDHHS' process and is hearsay and cannot be used for the truth of the matter asserted.

GDHHS argues these reports are permitted pursuant to N.C. Gen. Stat. § 8C-1 Rule 803(6) (business records of regularly conducted activity are not excluded by the hearsay rule). A business record may be admitted when:

> [A] proper foundation . . . is laid by . . . a witness who is
> familiar with the . . . records and the methods under which

> they were made so as to satisfy the court that . . . the
> sources of information, and the time of preparation render
> such evidence trustworthy.

*In re S.D.J.*, 192 N.C. App. 478, 482, 665 S.E.2d 818, 821 (2008).

At the adjudication, Joyce testified to the proper foundation of receipt of these records and Respondent-mother's records in Randolph County fall within the business records exception to the hearsay rule. Respondent-mother's challenge to this finding is overruled.

Findings 23 and 24 are the alleged criminal histories of Margaret's and Chris' putative fathers, but no records were provided or presented to the court to support these findings. These criminal histories are presumably presented to prove the children are neglected by proxy, by actions of non-party "caretaker[s] [who do] not provide proper care, supervision, or discipline . . . or who lives in an environment injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15)(ii) (2019). Findings 23 and 24 are irrelevant as neither of these men are parties in the appeal before us.

Finding 26 states Respondent-stepfather did not believe the disciplinary actions were inappropriate, and he never disclosed he would not discipline Chris and Anna in the same manner he had disciplined Margaret. Finding 26 is an arbitrary presumption of a forecast of how Respondent-stepfather may discipline Chris and Anna in the future and is unsupported by testimony or other evidence.

The statements and hearsay which support findings of fact 14, 17, 23-24 and

26 were improperly allowed. Findings 15 and 20 are based upon hearsay but may be properly admitted with proper foundations under established exceptions.

### D. Abuse and Neglect

#### 1. Standard of Review

> The role of this Court in reviewing a trial court's adjudication of neglect and abuse is to determine whether the findings of fact are supported by clear and convincing evidence, and whether the legal conclusions are supported by the findings of fact. If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary.

*In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (alterations, internal citations and quotation marks omitted).

#### 2. Juvenile Code

An abused juvenile is one whose parent "inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means [or] creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means." N.C. Gen. Stat. § 7B-101(1)(a)-(b) (2019). A neglected juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101 (15).

"In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." *In re Montgomery*, 311 N.C. at 109, 316 S.E.2d at 252.

"In order to adjudicate a juvenile neglected, our courts have additionally required that there be some physical, mental, or emotional impairment of the juvenile or a *substantial risk of such impairment* as a consequence of the failure to provide proper care, supervision, or discipline." *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (emphasis supplied).

### 3. Margaret

#### a. <u>Serious Physical Injury</u>

GDHHS alleged and asserted Margaret had suffered "serious physical injury by other than accidental means" or faced "a substantial risk" of suffering it. N.C. Gen. Stat. § 7B-101(1)(a)-(b). GDHHS provided evidence tending to show: (1) Joyce observed marks on Margaret's lower back and a mark near her neck, and (2) Respondent-mother admitted the bruises were an accident prompted by Margaret's movement while being disciplined with a belt.

This Court, when determining whether a "serious physical injury" exists in the context of an abuse adjudication, has held "the nature of the injury is dependent on the facts of each case." *In re L.T.R.*, 181 N.C. App. 376, 383, 639 S.E.2d 122, 126 (2007).

This Court has previously and repeatedly declined to find spanking that resulted in a temporary bruise constitutes abuse. *See Scott v. Scott*, 157 N.C. App. 382, 387, 579 S.E.2d 431, 435 (2003) (no conclusive evidence of abuse where spanking with a belt left temporary red marks on child's back and buttocks).

This Court is bound by these precedents. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989).  No evidence was presented to show Margaret suffered anything other than temporary marks or bruising from the spanking.  The evidence and findings mandate the same conclusion here that spanking with temporary marks and bruises are not "serious physical injury" under the statute to support an adjudication of abuse. N.C. Gen. Stat. § 7B-101.

Clear and convincing evidence must support a finding and conclusion that Margaret suffered or will suffer "serious physical injury" to  support an adjudication of abuse or neglect under either the statute or our precedents. *Scott*, 157 N.C. App. at 387, 579 S.E.2d at 435.  Presuming the juvenile was corporally punished, forced to eat crunchy peanut butter sandwiches, stands in the corner for a lengthy time or upon one leg while doing homework, or sleeps upon the floor as punishments for lying, none of those actions, standing alone or taken together, are sufficient to show clear and convincing evidence of abuse or neglect.

b. Grossly Inappropriate Procedures

The Juvenile Code includes in its definition of abuse that the parent "uses or allows to be used upon the juvenile cruel or grossly inappropriate procedures or cruel or grossly inappropriate devices to modify behavior." N.C. Gen. Stat. § 7B-101(1)(c) (2019).

The trial court received into evidence the Guardian *ad Litem's* exhibit number one, a letter purportedly written by Margaret stating she wanted to stay with her grandmother, and "only once my mom tried to choke me." As noted above, Margaret was not found to be unavailable and was not called as a witness. "[P]recedent requires that the trial court enter sufficient findings of fact to support its conclusion of unavailability." *In re B.W.*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2020 WL 6733479, at *5 (2020); *see also State v. Fowler*, 353 N.C. 599, 610, 548 S.E.2d 684, 693 (2001); *State v. Clonts*, 254 N.C. App. 95, 115, 802 S.E.2d 531, 545, *aff'd*, 371 N.C. 191, 813 S.E.2d 796 (2018).

No argument was asserted that a hearsay exception applied to prevent her from appearing and testifying as a witness based on her age or competency. This exhibit is inadmissible hearsay presented to prove the truth of a matter asserted in the form of a purported letter from Margaret addressed to the trial court. This letter is inadmissible hearsay and should not have been received into evidence.

Inadmissible hearsay cannot support a finding and certainly is not clear and convincing evidence to show Margaret had been choked or subjected to "cruel or

grossly inappropriate" discipline by Respondents. N.C. Gen. Stat. § 7B-101(1)(c). *See Rholetter v. Rholetter*, 162 N.C. App. 653, 656-61, 592 S.E.2d 237, 239-42 (2004).

While the trial court's remaining findings which are supported by competent, admissible evidence contain discussion of other alleged disciplinary measures imposed upon Margaret, it is also apparent the trial court's abuse adjudication is heavily reliant and intertwined with its findings based on inadmissible evidence. Consequently, we vacate the adjudication of Margaret as an abused juvenile and remand this matter for a new hearing at which the trial court should make findings on properly admitted clear and convincing evidence and make new conclusions of whether Margaret is an abused juvenile under the statute.

### c. Neglect of Margaret

Based on the same findings, the trial court also adjudicated Margaret as a neglected juvenile. This adjudication of neglect was also a product of the trial court's reliance, in significant part, on its findings based on inadmissible evidence. We also vacate the adjudication of Margaret as a neglected juvenile and remand the matter to the trial court for a new hearing following which the trial court should make findings of fact supported by competent, admissible evidence found to be clear and convincing and, further, to make a new conclusion whether or not Margaret is a neglected juvenile.

*4. Neglect of Chris and Anna*

Respondents argue Chris and Anna are not neglected juveniles because there was no indication they had ever been harmed or were at any risk of harm. Standing alone, the unsupported adjudication of abuse of Margaret cannot support adjudications for her younger siblings in the absence of evidence of their neglect.

> [I]n determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile . . . lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home . . . . [T]he fact of prior abuse, *standing alone*, is not sufficient to support an adjudication of neglect. Instead, this Court has generally required the presence of other factors to suggest that the neglect or abuse will be repeated.

*In re J.C.B.*, 233 N.C. App. 641, 644, 757 S.E.2d 487, 489 (2014) (emphasis supplied) (internal quotation marks and citations omitted).

Nothing in the record indicates Chris or Anna had been harmed or were at risk of being harmed. Joyce testified there were no concerns with Chris or Anna while they had remained in Respondents' care. The trial court concluded Chris and Anna were neglected based solely on its conclusion Margaret was purportedly abused and neglected. We reverse the trial court's conclusion that Chris and Anna are neglected juveniles and dismiss those petitions.

## VI. Dispositional Order

### A. Standard of Review

A dispositional order is reviewed for abuse of discretion. "[A]buse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the

result of a reasoned decision." *In re T.N.G.,* 244 N.C. App. 398, 408, 781 S.E.2d 93, 100 (2015) (quotation omitted). Dispositional findings must be supported by competent evidence. *In re B.C.T.*, 265 N.C. App. 176, 185, 828 S.E.2d 50, 57 (2019). "The court may prohibit visitation or contact by a parent when it is in the juvenile's best interest consistent with the juvenile's health and safety." *In re J.L.* 264 N.C. App. 408, 421, 826 S.E.2d 258, 268 (2019).

### B. Visitation Prohibition

The trial court concluded GDHHS had "made reasonable efforts to prevent the assumption of custody of the juveniles" pursuant to N.C. Gen. Stat. § 7B-903(a)(3). This conclusion was based upon GDHHS' interview with Margaret, contact with formerly involved police departments, contact with the school and interviews with the Respondent-mother and Respondent-stepfather.

Based on those factors, the trial court denied Respondents *any contact* with any of their children. Anna was eight months-old when this order was filed, and she spent her first birthday apart from her parents. Chris was not yet four when the order denying visitation was filed. This lack of contact occurred despite the absence of *any evidence* to support Chris or Anna had been abused or neglected.

The trial court concluded it was in the children's best interest, consistent with their health and safety, for them to be denied any visitation with their parents, relying on incompetent and inadmissible evidence concerning Margaret presented

during adjudication. The trial court failed to follow North Carolina statutes, and the rules of evidence. Further, the court abused its discretion by denying any contact between the children and their mother and Anna with her father, and an unsupported finding it is in "the best interest of the juvenile consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905.1(a) (2019).

We vacate the prohibition of visitation and remand to the trial court to order generous and increasing visitation between Margaret and her mother. *See* N.C. Gen. Stat. § 7B-905.1(b) (2019) (permitting the court to arrange visitation by court order). The dispositional no contact order for Chris and Anna is vacated and those petitions are dismissed.

## VII. Conclusion

Respondent-stepfather maintains standing to challenge the finding and conclusions regarding his daughter, Anna. The trial court failed to follow the rules of evidence regarding inadmissible hearsay evidence and used unsupported findings of fact to sustain findings 12-14, 17, 23-24 and 26, which do not support its conclusions. The trial court failed to properly find and conclude Chris and Anna were abused and neglected. Further, the trial court failed to admit or find clear and convincing evidence that the discipline of Margaret rose to the level of a "serious physical injury" as a result of the corporal punishment or other means of parental discipline.

We vacate the adjudication and disposition order and remand for dismissal of the petitions concerning Chris and Anna. Chris and Anna are to be immediately returned to their mother and stepfather.

We also vacate the denial of visitation for Respondent-mother and remand for entry of an order of increasing visitation for Respondent-mother and Margaret. Any new hearing on remand must be conducted in accordance with the Constitutional and due process rights of the Respondents as parents, including live testimony of witnesses in the absence of a supported finding of unavailability in accordance with, the applicable statutes, the rules of evidence, and our precedents. *It is so ordered.*

VACATED AND REMANDED.

Judges STROUD and HAMPSON concur.