IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-28

Filed 2 July 2025

Wilson County, Nos. 21 JA 77, 24 CVD 1355

IN THE MATTER OF: A.J.J.

Appeal by Respondent from orders entered 25 September 2024 by Judge Pell C. Cooper in Wilson County District Court. Heard in the Court of Appeals 11 June 2025.

*Beaman & Bennington, PLLC, by Attorney Jennifer K. Bennington, for petitioner-appellee Wilson County Department of Social Services.*

*Parent Defender Wendy C. Sotolongo, by Sr. Assistant Parent Defender, J. Lee Gilliam, for respondent-appellant mother.*

*Manning, Fulton & Skinner, P.A., by Attorney Michael S. Harrell, for petitioner-appellee Guardian ad Litem.*

STADING, Judge.

Respondent-Mother ("Mother") appeals from orders awarding physical and legal custody of her minor child, A.J.J. ("Adam")[1], to Cliff Padilla and Dorothy Council. On appeal, Mother argues the trial court erred in awarding custody to a non-parent, abused its discretion in imposing visitation provisions, and erred in transferring the Chapter 7B juvenile proceeding to a Chapter 50 civil custody

---

[1] *See* N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the minor children).

proceeding. For the reasons below, we affirm in part, vacate in part, and remand for further proceedings.

## I. Background

In early August 2021, the Wilson County Department of Social Services ("DSS") received a "child protective services report regarding issues of neglect due to improper care and improper supervision involving [Adam] . . . ."[2] The report stated Mother "had kicked [Adam] out of the house and he was found walking down a highway." In response, DSS "met with [Adam] and . . . [M]other at the police department where [Mother] decided to send [Adam] to stay with his father in Pitt County."[3] Adam displayed concerning behaviors while living with his father thereafter, including "running away, breaking a window, hitting [a] refrigerator, and bec[oming] physical with his father and grandmother." As a result, an additional child protective services report was filed in Pitt County.

On 2 September 2021, DSS filed a juvenile petition alleging Adam was neglected and dependent. DSS obtained nonsecure custody of Adam shortly thereafter on 8 September 2021. The petition asserted Adam "does not receive proper care, supervision, or discipline"; Adam "is not provided necessary remedial care"; Adam "lives in an environment injurious to [his] welfare"; Mother "is unable to provide for [Adam's] care or supervision"; and Mother "lacks an appropriate

---

[2] Adam was eleven years old at the time of the child protective services report.
[3] Adam's biological father is not a party-to or the subject of this appeal.

alternative childcare arrangement." After a hearing, the trial court adjudicated Adam to be neglected and dependent on 30 March 2022. The trial court found: (1) Mother "ha[s] some physical limitations due to injuries from a car accident"; (2) Mother "reported that she cannot physically take care of [Adam] with his behavioral issues"; (3) Mother "failed to follow up with mental health services" to address Adam's behavioral concerns; (4) Mother failed to attend the parenting classes referred to her by DSS; and (5) Mother failed "to maintain a clean and safe living environment for [Adam]." The trial court ordered Mother to comply with the following in-home service plan at this time:

> a. Engage with medical and mental health treatment to include completing an updated mental health assessment or psychological evaluation if deemed necessary, follow all recommendations of that mental health provider(s), report any treatment changes, and sign any necessary consent forms for the Department to speak with the medical and mental health providers.
>
> b. Maintain regular contact with the Department including but not limited to scheduled home visits.
>
> c. Participate in and complete parenting classes and demonstrate learned skills during scheduled future visitations.
>
> d. Create a support system committed in support and safety of the child and parent.

From July 2022 through September 2024, the trial court conducted eight permanency planning hearings. The orders entered as a result of those proceedings reflect that Mother failed to make progress towards her service plan during this time.

In the third permanency planning order, entered on 1 March 2023, the trial court ordered custody as the primary plan, ordered guardianship as the secondary plan, and "relieved [DSS] of reasonable efforts towards reunification with . . . [Mother]." Before the fifth permanency hearing commenced on 6 November 2023, DSS submitted a report, noting that Adam's paternal uncle, Cliff Padilla, and his girlfriend, Dorothy Council, "communicated their desire to be assessed for placement and support." In the November 2023 permanency planning order, the trial court adopted DSS's placement recommendations, ordering the primary plan as "custody with . . . Cliff Padilla and Dorothy [ ] Council" and the secondary plan as "Guardianship with . . . Cliff Padilla and Dorothy [ ] Council." Adam was ultimately placed with Cliff Padilla and Dorothy Council ("Custodians") on 2 February 2024.

At subsequent permanency planning hearings held on 21 February 2024 and 1 May 2024, the trial court's permanent and secondary plans for Adam remained intact—custody or guardianship with the Custodians. And at the eighth and final permanency planning hearing ("Final PPR Hearing") held on 18 September 2024, the trial court granted legal and physical custody of Adam to the Custodians. The trial court entered its order ("PPR Order") on 25 September 2024, concluding: "The juvenile case shall be closed, and the jurisdiction of the Juvenile Court terminated, and a separate Chapter 50 order should be entered." That same day, the trial court entered a Chapter 50 custody order ("Chapter 50 Order") and made the following findings:

- 4 -

2. The caretakers of [Adam] are Cliff Padilla and Dorothy Council.

3. A Court for Wilson County, North Carolina, obtained jurisdiction over [Adam] and the Court has determined that custody of said Juvenile should be awarded as set forth herein . . . .

. . . .

6. The Court finds the following facts in support of the entry of the custody order entered hereafter under Chapter 50:

[Adam] is 14 years old, and he has been residing with his paternal relatives, Cliff Padilla and Dorothy Council, since on or about February 2, 2024. Mr. Padilla and Ms. Council have been meeting [Adam's] daily and well-being needs since he has come to reside with them, and they are ready, willing, and able to continue to do so. [Adam] reports being happy in this placement, and his needs are being met. [Adam] should continue to remain in this placement at this time.

Mother . . . has a history of mental health illness, which she has not consistently addressed over the past three years. She is currently residing in Rocky Mount, NC at a hotel. [Mother] does not have suitable housing for [Adam], and she has not demonstrated on a consistent basis her ability to provide a safe living environment for [Adam]. For the past three years, [Mother] has not been cooperative in working towards reunification with [Adam], and she has only minimally engaged in visitation with [Adam].

. . . .

[Mother's] behaviors and failure to address the concerns that led to [Adam's] remov[al], demonstrate that her conduct is inconsistent with a parent's constitutionally protected status, and she is unfit to parent [Adam] currently. . . .

The Chapter 50 Order also set out the following visitation provisions for Mother:

> [Mother] . . . shall have unsupervised, once per week, audio and video contact with [Adam]. [Mother] can have a minimum of once per month, monitored family time in an agreed location but not limited to the Rocky Mount and Greenville community. [Mother] is responsible for reaching out to the [Custodians] to coordinate family time the fifth of every month. The [Custodians] will have the discretion to transition family time between [Adam] and [M]other to unsupervised. If during monitored or future unsupervised family time or contact between the parent or juvenile, begins to trigger regressive behaviors of [Adam] or cause discord between the [Custodians] that may lead to possible placement disruption, and cannot be redirected, visits/contact may be ceased, and a Motion for Review may be filed with the Court.

Mother timely entered her written notice of appeal from the PPR Order and the Chapter 50 Order on 24 October 2024.

## II. Jurisdiction

This Court has jurisdiction to entertain Mother's appeal under N.C. Gen. Stat. §§ 7A-27(b)(2) ("From any final judgment of a district court in a civil action."), and 7B-1001(a)(4) (2023) ("Any order, other than a nonsecure custody order, that changes legal custody of a juvenile.").

## III. Analysis

Mother submits three issues for our consideration: (1) whether the trial court erred in awarding permanent custody to non-parents without adequate verification of resources or understanding the placement; (2) whether the trial court abused its discretion regarding visitation provisions; and (3) whether the trial court erred in

transferring the Chapter 7B juvenile proceeding without making proper findings.

## A. Subsection 7B-906.1(j) Verifications

Mother asserts the trial court erroneously awarded permanent custody to a non-parent since it failed to make the requisite verifications under N.C. Gen. Stat. § 7B-906.1(j) (2023). Mother maintains the trial court failed to verify that the custodians: (1) understood the legal significance of the placement; and (2) had adequate resources to care appropriately for Adam.

"Our review of a permanency planning order 'is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law.' The trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *In re L.R.L.B.*, 377 N.C. 311, 315, 857 S.E.2d 105, 111 (2021) (citations omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *In re J.M.*, 384 N.C. 584, 591, 887 S.E.2d 823, 828 (2023) (citation omitted). "The trial court's conclusions of law are reviewable *de novo* on appeal." *In re P.O.*, 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010) (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court." *In re E.E.*, 294 N.C. App. 133, 136, 902 S.E.2d 299, 302 (2024) (citations omitted).

N.C. Gen. Stat. § 7B-906.1 provides the procedure a trial court must adhere to when conducting a permanency planning hearing. Relevant here, subsection 7B-

906.1(j) states a trial court must make two verifications when awarding custody to

somebody other than a parent:

> If the court determines that the juvenile shall be placed in
> the custody of an individual other than a parent . . . , the
> court shall verify that the person receiving custody . . . of
> the juvenile understands the legal significance of the
> placement . . . and will have adequate resources to care
> appropriately for the juvenile. The fact that the prospective
> custodian . . . has provided a stable placement for the
> juvenile for at least six consecutive months is evidence that
> the person has adequate resources.

*Id.* § 7B-906.1(j). Thus, where a court awards custody of a juvenile to a non-parent,

it must verify the person receiving custody: (1) "understands the legal significance of

the placement or appointment"; and (2) "will have adequate resources to care

appropriately for the juvenile." *Id.* "A permanent plan of custody order which does

not contain the required verification must be vacated and remanded." *In re J.C.-B.*,

276 N.C. App. 180, 187, 856 S.E.2d 883, 889 (2021).

Subsection 7B-906.1(j) "does not require the trial court to 'make any specific

findings in order to make the verification.' However, [ ] the record must show the

trial court received and considered reliable evidence that the guardian or custodian

had adequate resources and understood the legal significance of custody or

guardianship." *In re J.D.M.-J.*, 260 N.C. App. at 65, 817 S.E.2d at 761 (internal

citation omitted); *see also In re P.A.*, 241 N.C. App. 53, 61, 772 S.E.2d 240, 246 (2015)

("[T]he trial court need not make detailed findings of evidentiary facts or extensive

findings regarding the [custodian's] situation and resources, nor does the law require

- 8 -

any specific form of investigation of the potential [custodian].”); *see also In re K.P.*, 383 N.C. 292, 306, 306, 881 S.E.2d 250, 259, 259 (2022) (“While this Court has never addressed the minimum evidentiary requirements which are sufficient to support a trial court's verification . . . the Court of Appeals provided instructive guidance on the matter in the opinion which it rendered in *In re J.D.M.-J . . . .*”); *see also In re J.H.*, 244 N.C. App. 255, 270–71, 780 S.E.2d 228, 240 (2015) (“[T]he record must contain competent evidence of the [custodians'] financial resources and their awareness of their legal obligations.”).

“At a permanency planning hearing '[t]he court may consider any evidence, including hearsay evidence . . . that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.'” *In re J.R.*, 279 N.C. App. 352, 361, 866 S.E.2d 1, 7 (2021) (quoting N.C. Gen. Stat. § 7B-906.1(c)). Such “evidence may include reports and home studies conducted by the guardian ad litem or department of social services.” *Id.*

“The fact that the prospective custodian . . . has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources.” N.C. Gen. Stat. § 7B-906.1(j); *see also In re K.P.*, 383 N.C. at 308, 881 S.E.2d at 260; *see also In re A.N.T.*, 272 N.C. App. 19, 23, 845 S.E.2d 176, 179 (2020) (citation omitted) (“[T]he court may consider the guardian to have 'adequate resources' when the guardian has 'provided a stable placement for the juvenile for at least six consecutive months.'”). Although “'placement for the juvenile

for at least six consecutive months is evidence that the person has adequate resources,' . . . such evidence does not *per se* compel a conclusion that the 'person receiving custody . . . understands the legal significance of the placement.'" *In re J.C.-B.*, 276 N.C. App. at 188, 856 S.E.2d at 889 (citation omitted) (second ellipses in original). Evidence that a custodian understands the legal significance of the placement may consist of "testimony from the potential [custodian] of a desire to take [custody] of the child . . . and testimony from a social worker that the potential [custodian] was willing to assume legal [custody]." *In re E.M.*, 249 N.C. App. 44, 54, 790 S.E.2d 863, 872 (2016).

### 1. Legal Significance

Mother first contends the trial court failed to verify whether the custodians understood the legal significance of the placement. Mother maintains the trial court's verification is inadequate since Ms. Council—the other Custodian—did not testify to understanding the legal significance of obtaining custody of Adam. *See In re L.M.*, 238 N.C. App. 345, 348–49, 767 S.E.2d 430, 433 (2014) ("Although there was sufficient evidence to verify [the juvenile's] foster father as a suitable guardian, we hold there was insufficient evidence that [the juvenile's] foster mother understood and accepted the responsibilities of guardianship. As DSS concedes, the foster mother did not testify and did not sign a guardianship form."); *see also In re E.M.*, 249 N.C. App. at 55, 790 S.E.2d at 872 ("Here, the husband in the custodial couple did not testify, and there is no evidence to indicate that he understood the legal significance of taking

custody of [the juvenile]. Further, although his wife testified at the hearing, she never testified regarding her understanding of the legal relationship, and the court never examined her to determine whether she understands the legal significance of the relationship."). However, a more recent decision from our Supreme Court demonstrates when awarding custody of a juvenile to a custodial couple, the testimony of one of the custodians—without the testimony of the other—is sufficient where the testifying custodian expresses the custodial couple understands the legal significance of the placement.[4]  *See In re K.P.*, 383 N.C. at 308, 881 S.E.2d at 260.

In *In re K.P.*, the respondent-mother appealed from an order awarding physical and legal custody of her minor child to a custodial couple.  *Id.* at 298, 881 S.E.2d at 254.  The respondent-mother asserted the trial court failed to verify whether the custodial couple understood the legal significance of the minor child's placement and possessed adequate resources under N.C. Gen. Stat. § 7B-906.1(j).  *Id.* at 299, 881 S.E.2d at 254.  The Court of Appeals agreed, concluding:

> the evidence that (1) [the custodial couple] did an excellent job taking care of [the minor child] as the juvenile's court-appointed caretakers; (2) the [custodial] couple were willing to serve as a permanent placement for the child; and (3) the household could financially support [the minor child] without substantial outside assistance *was insufficient to "show the trial court received and considered*

---

[4] The Court of Appeals opinion, which our Supreme Court reversed on the issue of verification, notes that the custodial wife "did not testify at the final permanency planning hearing . . . ."  *In re K.P.*, 278 N.C. App. 42, 50, 861 S.E.2d 754, 759 (2021).  The Court cited both *In re L.M.* and *In re E.M.* to support the proposition that *both custodians* must testify to understanding the legal significance of the placement.  *Id.* at 51, 861 S.E.2d at 760.

> *reliable evidence that the guardian or custodian had*
> *adequate resources and understood the legal significance of*
> *custody or guardianship."*

*Id.* at 299–300, 881 S.E.2d at 255 (emphasis added). Upon review thereafter, our Supreme Court reversed the Court of Appeals decision, "reject[ing] the majority's conclusion regarding verification." *Id.* at 308, 881 S.E.2d at 260. The Court reasoned:

> Despite the lack of any specific findings which are expressly identified in N.C. [Gen. Stat.] § 7B-906.1(j) as being required to authorize a trial court to properly establish verification, we can determine from the record of the 3 June 2020 permanency planning review hearing that the trial court sufficiently verified that the [custodial couple] . . . , in receiving legal and physical custody of the juvenile [ ], understood the legal significance of the placement and had adequate resources to care appropriately for the child. *The combined testimony rendered by the DSS social worker and [the custodial husband] amply support this determination.*

*Id.* at 308, 881 S.E.2d at 260 (emphasis added). Although the custodial wife did not testify, the Court determined the social worker's testimony, coupled with the custodial husband's testimony, satisfied the verification requirements under N.C. Gen. Stat. § 7B-906.1(j). *Id.*

Here, the record contains sufficient evidence showing the Custodians understood the legal significance of obtaining custody over Adam. *See In re J.D.M.-J.*, 260 N.C. App. at 65, 817 S.E.2d at 761. Indeed, a DSS social worker recommended that physical and legal custody be awarded to the Custodians. The social worker testified to "discussing with the [Custodians] what the Department's

recommendations are" prior to the Final PPR hearing, which the Custodians agreed to. *See In re E.M.*, 249 N.C. App. at 54, 790 S.E.2d at 872 (Evidence showing that a custodian understands the legal significance of the placement may consist of "testimony from a social worker that the potential [custodian] was willing to assume legal [custody]."). Moreover, after the trial court ordered reunification efforts by DSS to cease, the Custodians contacted DSS and "communicated their desire to be assessed for placement of [Adam]."

In addition, and similar to *In re K.P.*, Mr. Padilla—one of the Custodians—testified that he and Ms. Council: could continue to meet Adam's needs on a long term basis; understood the recommendation by DSS; understood that they would receive custody of Adam; wanted to receive custody of Adam; were willing to continue Adam's counseling sessions moving forward; and were working with Adam on progressing in school, which was a priority to them. *See In re E.M.*, 249 N.C. App. at 54, 790 S.E.2d at 872 (Evidence showing that a custodian understands the legal significance of the placement may consist of "testimony from the potential [custodian] of a desire to take [custody] of the child . . . ."). Mr. Padilla also testified that he and Ms. Council were "willing and able to meet [Adam's] needs going forward for as long as necessary[.]" Finally, the GAL report, prepared in advance of the Final PPR Hearing, notes that the Custodians had been taking care of Adam's medical and dental needs, including: "establish[ing] [Adam] with a [medical] provider in Greenville"; scheduling a follow up appointment in April 2024; and taking Adam to "a dentist in . . . April 2024 for a

routine cleaning and exam."

In sum, the combined testimony rendered by the DSS social worker and Mr. Padilla, as well as the GAL and DSS reports, shows the Custodians understood the legal significance of being awarded custody of Adam. *See In re K.P.*, 383 N.C. at 308, 881 S.E.2d at 260; *see also* N.C. Gen. Stat. § 7B-906.1(j). Mother's assignment of error is overruled.

### 2. *Adequate Resources*

Mother next maintains there is insufficient evidence demonstrating the Custodians possessed adequate resources since there was no evidence of the Custodians' employment and approximate income. Mother also asserts that a juvenile residing with a custodial family for greater than six months, without more evidence, is insufficient to show a custodial couple possesses adequate resources.

Mother argues precedent demonstrates there must be evidence of the Custodians' income or employment to verify adequate resources under subsubsection 7B-906.1(j). *See In re P.A.*, 241 N.C. App. at 65, 772 S.E.2d at 248; *see also In re K.B.*, 249 N.C. App. 263, 267, 803 S.E.2d 628, 631 (2016); *see also In re S.B.*, 268 N.C. App. 78, 89, 834 S.E.2d 683, 691 (2019); *see also In re J.D.M.-J.*, 260 N.C. App. at 66, 817 S.E.2d at 762; *see also In re K.P.*, 383 N.C. at 306, 881 S.E.2d at 259.

For example, in *In re J.D.M.-J.*, the trial court awarded custody of the respondent's children to the maternal aunt and uncle. 260 N.C. App. at 58, 817 S.E.2d at 758. On appeal, the respondent argued the trial court failed to verify

whether "the couple had adequate resources to care for the children [ ] and [ ] understood the legal significance of the placement." *Id.* at 64, 817 S.E.2d at 760. Our Court agreed the record did not contain sufficient evidence of the adequacy of the custodial couple's financial resources. *Id.* at 66, 817 S.E.2d at 762. Although the trial court received a financial affidavit into evidence, and a social worker testified there were no "concerns" with the custodians' financial resources, the Court noted:

> While this testimony constituted evidence that the [custodians] did possess *some* income, it did not state the amount of that income or demonstrate that it was sufficient to provide necessary care for the juveniles. Moreover, the social worker's statement that there were no concerns with the [custodians'] financial affidavit is too vague to constitute adequate evidence that they did, in fact, possess adequate resources to care for the juveniles.

*Id.* at 67, 817 S.E.2d at 762. The Court thus "vacate[d] the trial court's award of custody . . . and remand[ed] for further proceedings." *Id.* at 68, 817 S.E.2d at 763.

We note most of the cases cited by Mother, including *In re J.D.M.-J.*, occurred *before* N.C. Gen. Stat. § 7B-906.1(j) was amended to add:

> The fact that the prospective custodian or guardian has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources.

Prior to its effective date, 1 October 2019, subsection 7B-906.1(j) did not include this six-month provision as "evidence that the person has adequate resources."

We remain cognizant of a similar matter decided by our Court in *In re E.M.*— a case decided before the amendment to N.C. Gen. Stat. § 7B-906.1(j). In that case,

- 15 -

the respondent appealed from an order awarding legal custody of the minor child to the paternal cousin and his wife. *In re E.M.,* 249 N.C. App. at 44–45, 790 S.E.2d at 866. The respondent asserted, "the district court erred by granting custody to a non-parent without verifying that the person receiving custody understood the legal significance of the placement and will have adequate resources to care appropriately for the juvenile as required by N.C. Gen. Stat. § 7B-906.1(j)." *In re E.M.*, 249 N.C. App. at 44–45, 790 S.E.2d at 866. Our Court disagreed with respect to the adequate resources prong, holding, "direct, specific evidence supports the court's finding that the paternal cousins have adequate resources to care appropriately for [the minor child]." *Id.* at 54, 790 S.E.2d at 872. The Court determined the following record evidence supported the trial court's verification: the custodians owned their home; the juvenile resided with the custodians for sixteen months before the hearing; the juvenile had his own bedroom, play area, and toys; the custodians provided all of the juvenile's medical, dental, vision, and developmental needs; the custodial husband maintained employment with three employers; the custodial wife worked on the weekends and cared for the juvenile during the week; the mother-in-law cared for the juvenile on the weekends; the custodians had taken the juvenile on several vacations; and the custodians held a birthday party for the juvenile's first birthday. *Id.* Notably, the *In re E.M.* Court did not receive any evidence revealing the amount of income either custodian earned; notwithstanding, the Court held, "[t]his evidence is sufficient to support the district court's determination that the paternal cousins have

adequate resources to care for Eddie." *Id.*

Here, although the record in this case does not contain evidence as to either of the Custodians' income or employment, we hold the trial court received sufficient evidence to verify the adequacy of their resources. *Compare In re E.M.*, 249 N.C. App. at 54, 790 S.E.2d at 872; *with In re J.D.M.-J.,* 260 N.C. App. at 65–67, 817 S.E.2d at 761–62. The trial court's Finding of Fact No. 20 notes Adam had been living with the Custodians more than six months:

> [Adam] has resided with [the Custodians] since or about February 2, 2024, and they have been listed as part of the permanency plan for [Adam]. [The Custodians] have been providing [Adam] with a safe and stable home for about six months. [The Custodians] are ready, willing, and able to continue to provide a safe and stable home and meet [Adam's] needs as long as necessary.

*See In re A.N.T.*, 272 N.C. App. at 23, 845 S.E.2d at 179 (citation omitted). Subsection 7B-906.1(j) expressly states such evidence "is evidence that the person has adequate resources." N.C. Gen. Stat. § 7B-906.1(j). In addition, Mr. Padilla testified his household was "financially able to meet [Adam's] needs" at the hearing, noting Adam "ha[s] his own room, his own bed, TV, Internet, [and] phone." *See In re E.M.*, 249 N.C. App. at 54, 790 S.E.2d at 872. Moreover, Mr. Padilla's testimony was corroborated by the social worker's testimony as follows:

> [DSS ATTORNEY]: Have you had an opportunity to observe [Adam] in that placement?
>
> [SOCIAL WORKER]: Yes.

> [DSS ATTORNEY]: And describe for the Court what you've seen.
>
> [SOCIAL WORKER]: Overall, the [Custodians] are very committed to [Adam]. [Adam] appears to feel comfortable and safe in that environment. He has his own sleeping space, plenty of storage space, plenty of food, clean environment, very warm and open.

Mr. Padilla also testified that he and Ms. Council were willing to continue Adam's counseling sessions and were "ready, willing, and able to meet [Adam's] needs going forward for as long as necessary." Finally, the GAL report notes the Custodians "established [Adam] with a [medical] provider in Greenville," scheduled a follow up appointment in April 2024, and took Adam to see "a dentist in . . . April 2024 for a routine cleaning and exam."

As with *In re E.M.*, the evidence in the instant case supports the conclusion that the trial court verified the adequacy of the Custodians' resources. Although the *E.M.* decision did not have the benefit of our general assembly's amendment to N.C. Gen. Stat. § 7B-901.6(j), it similarly determined that greater than six months of placement with a prospective custodian is evidence of adequate resources. *Id.* at 54, 790 S.E.2d at 872. The trial court did not commit error in finding the Custodians possessed adequate resources to care for Adam.

## B. Visitation Provisions

Mother next asserts the trial court abused its discretion by imposing the visitation provision in its orders. Mother contends the trial court may not grant the

Custodians discretion to cease visits, and the visitation provision does not accommodate Mother's physical disability under the Americans with Disabilities Act.

"A trial court's order regarding visitation rights is reviewed for an abuse of discretion." *In re R.J.P.*, 284 N.C. App. 53, 60, 875 S.E.2d 1, 6 (2022). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re A.L.S.*, 374 N.C. 515, 517, 843 S.E.2d 89, 91 (2020) (citation omitted).

### 1. *Delegation of Visitation Authority to Custodians*

Mother maintains the trial court abused its discretion by granting the Custodians the authority to modify or cease her visitation under *In re C.S.L.B.*, 254 N.C. App. 395, 400, 829 S.E.2d 492, 495 (2017). Although we ultimately agree with Mother on this issue, we note N.C. Gen. Stat. § 7B-905.1 does not apply since the trial court "properly terminated jurisdiction in the abuse, neglect, and dependency proceeding at the disposition phase by opening a new Chapter 50 civil custody case under N.C. Gen. Stat. § 7B-911 . . . ." *In re Matter S.G.*, 288 N.C. App. 489, 885 S.E.2d 143 (Apr. 18, 2023) (unpublished) ("The trial court properly terminated jurisdiction in the abuse, neglect, and dependency proceeding at the disposition phase by opening a new Chapter 50 civil custody case under N.C. Gen. Stat. § 7B-911, thus N.C. Gen. Stat. § 7B-905.1 regarding visitation rights was not applicable."). In any event, Mother's contention is correct with respect to the Chapter 50 Order since it impermissibly delegates visitation authority to the Custodians. *In re Custody of*

*Stancil,* 10 N.C. App. 545, 550, 179 S.E.2d 844, 848 (1971).

"[T]he feasible exercise of a parent's right of visitation should be safeguarded by a definite provision in the order or decree of the court awarding the custody of the child to another person." *Id.* at 550, 179 S.E.2d at 848 (citation omitted). However,

> [t]he order should not make the right of visitation contingent upon an invitation from the party having the custody of the child, or require the consent of one parent for the other to visit the child, or provide that the parent shall have the right of visitation only at such times as may be convenient to the party having the custody of the child, thereby leaving the privilege of visitation entirely to the discretion of the party having the child in custody.

*Id.* (citation omitted). "When the custody of a child is awarded by the court, it is the exercise of a judicial function. In like manner, when visitation rights are awarded, it is the exercise of a judicial function." *Id.* at 552, 179 S.E.2d at 849 (internal citation omitted). A trial court may not delegate this judicial function to a custodian since:

> those who are involved in a controversy over the custody of a child have been unable to come to a satisfactory mutual agreement concerning custody and visitation rights. To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian.

*Id.*[5]

---

[5] The trial court entered the same visitation procedures in the Chapters 7B and 50 orders. *In re C.S.L.B.* addresses visitation entered under Chapter 7B and holds a trial court "may not delegate its judicial function of awarding visitation." 254 N.C. App. at 399, 829 S.E.2d at 495. *In re Custody of*

Here, the trial court's orders contain the following visitation provision:

> [Mother] . . . shall have unsupervised, once per week, audio and video contact with [Adam]. [Mother] can have a minimum of once per month, monitored family time in an agreed location but not limited to the Rocky Mount and Greenville community. [Mother] is responsible for reaching out to the [Custodians] to coordinate family time the fifth of every month. *The [Custodians] will have the discretion* to transition family time between [Adam] and [M]other *to unsupervised.* If during monitored or future unsupervised family time or contact between the parent or juvenile, begins to trigger regressive behaviors of [Adam] or cause discord between the [Custodians] that may lead to possible placement disruption, and cannot be redirected, *visits/contact may be ceased*, and a Motion for Review may be filed with the Court.

(emphasis added). In current form, the Chapter 50 Order's visitation provision impermissibly allows the Custodians to modify Mother's visitation from supervised to unsupervised. *See id.* Furthermore, the Chapter 50 Order appears to improperly delegate authority to the Custodians to cease visitation and thus requires clarification. *See id.*

We therefore vacate the trial court's visitation provision in the Chapter 50 Order and remand for further proceedings consistent with this opinion. *See id.* at

---

*Stancil*, involves an action initiated under Chapter 50 and draws the same conclusion with respect to the trial court's improper delegation of authority to award visitation of a minor child. 10 N.C. App. at 552, 179 S.E.2d at 849 ("[W]hen visitation rights are awarded, it is the exercise of a judicial function. We do not think that the exercise of this judicial function may be properly delegated by the court to the custodian of the child . . . . To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian.")

553, 179 S.E.2d at 850. As explained below in section C, since we affirm the Chapter 50 Order, we need not vacate the PPR Order. *See In re S.M.L.*, 272 N.C. App. 499, 519, 846 S.E.2d 790, 803 (2020); *see also In re Matter S.G.*, 288 N.C. App. 489, 885 S.E.2d 143 (unpublished).

## 2. *Disability Accommodation*

Mother next asserts the trial court abused its discretion by failing to "adequately consider [her] disability and provide appropriate accommodation." Mother contends she is physically disabled, and the Americans with Disabilities Act "extend[s] to parent-child visitation in a child welfare case."[6] *See* 42 U.S.C.S. §§ 12102, 12132. As such, Mother maintains the trial court abused its discretion by leaving "the location of the visits in the discretion of the custodians." In Mother's view, the visits should occur where she lives, Rocky Mount, in light of her disability.

However, Mother did not raise this argument at the trial level. *See In re B.C.T.*, 265 N.C. App. 176, 193, 828 S.E.2d 50, 61 (2019) (citation omitted) ("[P]arties

---

[6] "The ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *In re C.M.S.*, 184 N.C. App. 488, 491–92, 646 S.E.2d 592, 594–95 (2007) (quoting 42 U.S.C.S. § 12132). "Title II of the ADA applies to . . . child welfare agencies and court systems. The 'services, programs, and activities' provided by public entities include, but are not limited to, investigations, assessments, provision of in-home services, removal of children from their homes, case planning and service planning, visitation, guardianship, adoption, foster care, and reunification services." U.S. Department of Health and Human Services and U.S. Department of Justice, *Protecting the Rights of Parents and Prospective Parents with Disabilities: Technical Assistance for State and Local Child Welfare Agencies and Courts under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act*, https://archive.ada.gov/doj_hhs_ta/child_welfare_ta.html (2015) (citations omitted).

are not allowed to make different arguments on appeal than before the trial court to 'swap horses between courts in order to get a better mount.'"); *see also In re S.A.*, 256 N.C. App. 398, 806 S.E.2d 81 (Nov. 7, 2017) (unpublished) ("The *Terry* court noted that claims that DSS violated the Americans with Disabilities Act must be asserted at the time the service plan is adopted to be preserved for appeal. . . . We are persuaded that the reasoning in *Terry* should apply here. [The r]espondent did not object to the adequacy of the services being offered by DSS before the permanency planning hearing. Likewise, [the r]espondent's counsel did not object on this ground at the permanency planning hearing, instead arguing that [the r]espondent needed more time to work toward reunification in light of her disability. . . . Thus, [the r]espondent waived this argument on appeal.").

Before Mother's appeal, she did not claim she was entitled to accommodations under the Americans with Disabilities Act, nor did she make arguments to that effect. At the trial level, Mother testified traveling is "a lot on her body," but she could "sometimes" travel to Greenville:

> The distance. Because . . . I do have record of what's going on with my slipped disc and my pain. I was supposed to be getting a[n] e-mail from one of my doctors about not going too far, if I could help it. So I just want to make sure I could get the visits in Rocky Mount, since that's where I'm residing. Because a 45-minute ride, plus two hours activity, plus 45 minutes, can be a lot on my body. So that's one of the things that I wanted to make sure I get, is closer visits. I mean, sometimes I could – I'm sorry. Sometimes I could go to Greenville. But I would have to go kind of by how I'm feeling.

Contrary to Mother's contention, the trial court ordered visitation to be conducted at "an agreed location but not limited to the Rocky Mount and Greenville community." In any event, the trial court did not have an opportunity to address Mother's assertion since she argues it for the first time on appeal. *See In re B.C.T.*, 265 N.C. App. at 193, 828 S.E.2d at 61. Accordingly, we decline further review of Mother's contention. *See id.*

### C. Chapter 50 Findings

Mother asserts the trial court erred in transferring the Chapter 7B juvenile proceeding to a Chapter 50 custody proceeding since it failed to make the requisite findings of fact under N.C. Gen. Stat. §§ 7B-911(c)(1)–(2) and 50-13.2(a) (2023). Mother maintains the Chapter 50 Order's findings are insufficient, conclusory, and do not speak to the Custodians' physical, financial, or mental fitness. She also contends the trial court's PPR Order makes no finding regarding continued State intervention.

"We review an order's compliance with statutory requirements *de novo.*" *In re S.M.L.*, 272 N.C. App. 499, 517, 846 S.E.2d 790, 802 (2020). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court." *In re E.E.*, 294 N.C. App. at 136, 902 S.E.2d at 302 (citations omitted).

"N.C. Gen. Stat. § 7B-911 specifically provides the procedure for transferring a Chapter 7B juvenile proceeding to a Chapter 50 civil action." *McMillan v.*

*McMillan*, 267 N.C. App. 537, 543, 833 S.E.2d 692, 696 (2019) (quoting *Sherrick v. Sherrick*, 209 N.C. App. 166, 169, 704 S.E.2d 314, 317 (2011)). Subsection 7B-911(a) provides, "[u]pon placing custody with a parent or other appropriate person, the court shall determine whether or not jurisdiction in the juvenile proceeding should be terminated and custody of the juvenile awarded to a parent or other appropriate person pursuant to G.S. 50-13.1, 50-13.2, 50-13.5, and 50-13.7." N.C. Gen. Stat. § 7B-911(a). When entering a civil child custody order under section 7B-911, the trial court must "[m]ake findings and conclusions that support the entry of a custody order in an action under Chapter 50 of the General Statutes . . . ." *Id.* § 7B-911(c)(1). In addition, a trial court must make the following findings under subsection 7B-911(c)(2)(a)–(b):

> a. There is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding.
>
> b. At least six months have passed since the court made a determination that the juvenile's placement with the person to whom the court is awarding custody is the permanent plan for the juvenile, though this finding is not required if the court is awarding custody to a parent or to a person with whom the child was living when the juvenile petition was filed.

*Id.* § 7B-911(c)(2).

Relevant here, N.C. Gen. Stat. § 50-13.2(a) states a trial court "shall award the custody of [a minor child] to such person . . . as will promote the interest and welfare of the child." When making this determination, the trial court must consider and

make written findings of all relevant factors:

> [T]he court *shall consider all relevant factors* including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party. *An order for custody must include written findings of fact that reflect the consideration of each of these factors and that support the determination of what is in the best interest of the child.*

*Id.* (emphasis added). "The determination of what will best promote the interest and welfare of the child . . . is a conclusion of law, . . . and this conclusion must be supported by findings of fact as to the characteristics of the parties competing for custody." *Hunt v. Hunt*, 112 N.C. App. 722, 728, 436 S.E.2d 856, 860 (1993) (citation and quotation marks omitted); *see also In re J.D.R.*, 239 N.C. App. at 72, 768 S.E.2d at 178 ("The judgment of the trial court should contain findings of fact which sustain the conclusion of law that custody of the child is awarded to the person who will best promote the interest and welfare of the child."). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978); *accord In re J.D.R.*, 239 N.C. App. at 72, 768 S.E.2d at 178; *accord Hunt*, 112 N.C. App. at 728, 436 S.E.2d at 860.

"[A] custody order is fatally defective where it fails to make detailed findings of fact from which an appellate court can determine that the order is in the best interest of the child . . . ." *Dixon v. Dixon*, 67 N.C. App. 73, 76–77, 312 S.E.2d 669, 672 (1984) (citation omitted). Additionally, "custody orders are routinely vacated

where the 'findings of fact' consist of mere conclusory statements that the party being awarded custody is a fit and proper person to have custody and that it will be in the best interest of the child to award custody to that person." *Id.*

Here, the trial court's Chapter 50 Order contains the following findings of fact:

> [Adam] is 14 years old, and he has been residing with his paternal relatives, Cliff Padilla and Dorothy Council, since on or about February 2, 2024. Mr. Padilla and Ms. Council have been meeting [Adam's] daily and well-being needs since he has come to reside with them, and they are ready, willing, and able to continue to do so. [Adam] reports being happy in this placement, and his needs are being met. [Adam] should continue to remain in this placement at this time.
>
> Mother . . . has a history of mental health illness, which she has not consistently addressed over the past three years. She is currently residing in Rocky Mount, NC at a hotel. [Mother] does not have suitable housing for [Adam], and she has not demonstrated on a consistent basis her ability to provide a safe living environment for [Adam]. For the past three years, [Mother] has not been cooperative in working towards reunification with [Adam], and she has only minimally engaged in visitation with [Adam].
>
> . . . .
>
> [Mother's] behaviors and failure to address the concerns that led to [Adam's] remov[al], demonstrate that her conduct is inconsistent with a parent's constitutionally protected status, and she is unfit to parent [Adam] currently. . . .

### 1. Subsection 7B-911(c)(1)

Mother maintains the following finding is conclusory: "[Adam] reports being happy in this placement, and his needs are being met." Contrary to Mother's urging,

- 27 -

we hold this finding is supported by the evidence and complies with N.C. Gen. Stat. §§ 7B-911(c)(1) and 50-13.2(a).

Indeed, the DSS report notes that Adam "communicated to the Department his desires to remain in his current relative placement." At the Final PPR hearing, a social worker from DSS testified to the fact that Adam's needs were being met and he felt comfortable and safe with the Custodians:

> [DSS ATTORNEY]: And how is that placement going?
>
> [SOCIAL WORKER]: It's going well.
>
> [DSS ATTORNEY]: Have you had an opportunity to observe [Adam] in that placement?
>
> [SOCIAL WORKER]: Yes.
>
> [DSS ATTORNEY]: And describe for the Court what you've seen.
>
> [SOCIAL WORKER]: Overall, the caretakers are very committed to [Adam]. [Adam] appears to feel comfortable and safe in that environment. He has his own sleeping space, plenty of storage space, plenty of food, clean environment, very warm and open.

Mr. Padilla corroborated that Adam "ha[s] his own room, his own bed, TV, Internet, [and] phone." Mr. Padilla added that he and Ms. Council were willing to continue Adam's counseling and were "ready, willing, and able to meet [Adam's] needs going forward for as long as necessary." Moreover, the GAL report notes the Custodians cared for Adam's medical and dental needs, including: "establish[ing] [Adam] with a [medical] provider in Greenville"; scheduling a follow up appointment

with the provider in April 2024; and taking Adam to "a dentist in . . . April 2024 for a routine cleaning and exam." Mother's first challenge is therefore overruled.

Mother next contends the trial court's Chapter 50 Order does not comply with N.C. Gen. Stat. §§ 7B-911(c)(1) and 50-13.2(a) since there are no detailed findings about the "physical, financial, or mental fitness" of the Custodians. But nothing in subsection 50-13.2(a) requires the trial to make findings as to these factors. Rather, case law posits that a court *may* make findings as to these factors if they are relevant to the best interest determination and brought out by the evidence. *See Steele*, 36 N.C. App. at 604, 244 S.E.2d at 468 (emphasis added) ("These findings *may* concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child."); *see also In re J.D.R.*, 239 N.C. App. at 72, 768 S.E.2d at 178; *see also Hunt*, 112 N.C. App. at 728, 436 S.E.2d at 860.

In any event, the trial court's Chapter 50 Order contains detailed findings as to several relevant factors in the instant case, including: Mother's history of mental illness; Mother's failure to address her mental health concerns; Mother's lack of suitable housing; Mother's lack of capability in providing a safe living environment for Adam; Mother's failure to make progress in her case plan with DSS to effectuate reunification with Adam; Mother's failure to engage in consistent visitation with Adam; the Custodian's ability and desire to provide for Adam; and Adam's feelings towards his placement with the Custodians. Based on these observations, the trial court concluded: "It is in the best interest of [A]dam . . . for legal and physical custody

to be granted to [the Custodians]." *See In re J.D.R.*, 239 N.C. App. at 72, 768 S.E.2d at 178 (holding the trial court rendered sufficient 7B-911(a) findings). The trial court's conclusion—awarding custody to the Custodians—is therefore "supported by findings of fact of the characteristics of the parties competing for custody." *Hunt*, 112 N.C. App. at 728, 436 S.E.2d at 860. Mother's argument here is also overruled.

### 2. Subsection 7B-911(c)(2)(a)—Continued State Intervention

Mother last submits the orders do not contain adequate findings regarding continued State intervention. *See* N.C. Gen. Stat. § 7B-911(c)(2)(a); *see also In re B.E.*, __ N.C. App. __ 909 S.E.2d 505, 511 (2024) (citation omitted) ("To terminate a juvenile proceeding and enter the case to a Chapter 50 proceeding as a civil action, the trial court must make certain findings of fact, including whether '[t]here is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding.'"). After careful consideration, we disagree.

The trial court made the following ultimate finding in its PPR Order: "There is no longer a need for the Department or the Juvenile Court to remain involved with this family." *Cf. In re J.B.*, 197 N.C. App. 497, 502, 677 S.E.2d 532, 535 (2009) (holding subsection 7B-911(c)(2)(a) was not satisfied since "the court did not find that there was no longer a need for continued State intervention on behalf of [the juvenile]."). The trial court also found:

> [R]easonable efforts towards reunification shall cease, as reasonable efforts by the Department are no longer necessary as the plan of Custody with relatives, Cliff

Padilla and Dorothy [ ] Council, has been achieved.

As a result of the findings, conclusions, and orders set forth herein, the Court will terminate the Court's jurisdiction in this Juvenile proceeding. The Court will enter a separate civil custody order with appropriate findings and conclusions of law regarding the custody of [Adam] and said order shall be filed in any pending custody action under Chapter 50. This order will constitute a final order on custody review in this Juvenile case as the Court is also entering, simultaneously with the entry of this order, a separate order with regards to modification of custody in a pending Chapter 50 Civil action or the initiation of a Civil action in custody of [Adam].

Ultimately, the trial court concluded: "The Juvenile case shall be closed, and the jurisdiction of the Juvenile Court terminated, and a separate Chapter 50 order should be entered. All counsel and the Guardian Ad Litem should be released."

Although the trial court did not use the exact language in subsection 7B-911(c)(2)(a), our Court has previously determined that substance prevails over form when determining the need for continued State intervention. *See In re A.S.*, 182 N.C. App. 139, 144, 641 S.E.2d 400, 403–04 (2007) (holding the trial court complied with subsection 7B-911(c)(2)(a) by finding that: regular visitation occurred; the parties communicated sufficiently to arrange their visitation without DSS's assistance; DSS wished to be relieved of further involvement; the parties had suitable homes for visitation and custody of the children; and "[DSS] and . . . GAL involvement is no longer necessary in this matter"); *cf. In re J.D.R.*, 239 N.C. App. at 72, 768 S.E.2d at 178 (distinguishing from *In re A.S.* in that "the disposition order contains no findings

from which this Court could infer that the trial court considered the extent to which continued State intervention was necessary.").

As in *In re A.S.*, the trial court's State intervention finding is supported by the record in that: (1) the Custodians "are willing to transport and supervise the Juvenile with [M]other outside in Rocky Mount"; (2) Mother testified her niece would be willing to supervise future visitation with the Custodians when available; (3) the visitation protocol requires Mother to reach out to Custodians for scheduling as opposed to DSS; (4) DSS "reached out to maternal aunt . . . to supervise" the visitation that occurred prior to the final PPR hearing; (5) Mother's virtual visits (once per week) will be conducted without supervision; (6) DSS's court report recommended that DSS, counsel, and the GAL "should be released"; (6) Mr. Padilla testified that he had "no problem with [Adam] visiting with [M]other" and was willing to work with Mother; (7) Mr. Padilla was "fine with other people supervising" Mother's visits; and (8) a DSS social worker testified there was no reason for the court "to stay involved in [Adam's] life after three years." Accordingly, we hold the trial court's State intervention findings satisfied N.C. Gen. Stat. § 7B-911(c)(2)(a). Mother's final argument is overruled.

## IV. Conclusion

For the foregoing reasons, we hold the trial court did not err in awarding custody of Adam to the Custodians since it made the requisite verifications under N.C. Gen. Stat. § 7B-906.1(j). We also hold the trial court did not commit error by

transferring the Chapter 7B juvenile proceeding to a Chapter 50 custody proceeding since it complied with N.C. Gen. Stat. §§ 7B-911 and 50-13.2. But since the trial court's Chapter 50 Order impermissibly delegated to the Custodians the authority to modify or cease Mother's visitation with Adam, this provision is vacated and remanded to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges GRIFFIN and FREEMAN concur.